(No. 15231.—Judgment affirmed.)

IRA MORRISON, Appellee, *vs.* JOSEPH C. FLOWERS, Appellant.

*Opinion filed April 18, 1923.*

1. CONSTITUTIONAL LAW—*the legislature may declare one fact prima facie evidence of another.* The legislature cannot declare what shall be conclusive evidence nor what weight the court shall give to certain evidence, but the legislature may prescribe that a certain fact shall be *prima facie* evidence of another fact if it has a tendency to prove such other fact.

2. MOTOR VEHICLES—*section 22 of Motor Vehicle law, declaring rule as to prima facie evidence, is valid.* Section 22 of the Motor Vehicle law, declaring that a speed in excess of ten miles an hour in certain localities shall be *prima facie* evidence that the motor vehicle is being operated at an unreasonable and dangerous rate of speed, is not invalid as an attempt of the legislature to exercise judicial power.

3. EVIDENCE—*what is prima facie evidence.* A *prima facie* case is one which is apparently established by evidence adduced by the plaintiff in support of his case up to the time such evidence stands unexplained and uncontradicted, and whatever evidence, while not rebutted or overcome, establishes the *prima facie* case, or which in the absence of explanatory or contradictory evidence constitutes proof of any other fact, is *prima facie* evidence.

4. SAME—*making one fact prima facie evidence of another does not change the burden of proof on the whole evidence.* The rule making one fact *prima facie* evidence of another does not change the burden of proof, but when all the evidence is introduced the case is to be determined upon the whole evidence.

5. NEGLIGENCE—*when age of plaintiff must be considered.* In a suit for personal injuries to a child who was run over by an automobile, in weighing the evidence the court must take into consideration the age of the plaintiff and his capacity to appreciate danger, and in the absence of proof to the contrary he will be expected to exercise that discretion and intelligence in protecting himself that would be expected of an average child of the same age under like circumstances.

6. SAME—*driver of automobile owes duty of reasonable care to children playing in streets.* The driver of a motor vehicle on the streets of a city is bound to recognize the fact that children will be found playing in the street and that they may sometimes attempt to cross the street unmindful of its dangers, and such driver owes the children the duty of reasonable and ordinary care under the circumstances.

7. SAME—*when plaintiff's failure to watch for motor vehicles will not bar recovery for personal injury.* A pedestrian has a right to assume that motor vehicles using the streets of a city will be driven at a lawful rate of speed, and failure to look for approaching cars will not, as a matter of law, bar recovery for a personal injury; but it is a question of fact for the jury to determine, from all the surrounding circumstances, whether the failure to look constitutes lack of due care.

8. SAME—*when driver of automobile is liable for unavoidable injury to child.* Where the driver of a motor vehicle is obeying all the requirements of the law and all the regulations for operating his machine, he is not, as a rule, liable for injuries received by a child who darts in front of the machine so suddenly that the driver cannot stop or otherwise avoid injuring the child; but if one is running his automobile at a speed in excess of the statutory limit or at an unreasonable or dangerous speed, he cannot escape liability because the child who is injured ran in front of the automobile so suddenly that the accident was unavoidable.

9. SAME—*when a negligent act is proximate cause of injury.* To make a negligent act the proximate cause of an injury it is not necessary that the particular injury and the particular manner of its occurrence could reasonably have been foreseen, but if the consequences follow in unbroken sequence from the wrong to the injury, without an intervening efficient cause, it is sufficient if at the time of the negligent act the wrongdoer might by the exercise of ordinary care have foreseen that some injury might result from his negligence.

APPEAL from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding.

McCORMICK, KIRKLAND, PATTERSON & FLEMING, JOHN W. D'ARCY, and FRANK M. COX, for appellant.

D. R. ANDERSON, for appellee.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

January 25, 1921, Ira Morrison, an eight-year-old boy, was run down and injured by the automobile of appellant. He brought this action by his next friend in the circuit court of Will county to recover damages and secured a ver-

dict for $3250. Judgment was entered on this verdict and an appeal prosecuted directly to this court on the ground that section 22 of the Motor Vehicle law is unconstitutional.

The collision occurred on the Desplaines river bridge, in the city of Joliet, about 4:30 P. M. Western avenue, an east and west street, crosses the river over this bridge. Running parallel with the river on its west side is Bluff street, which is the principal business thoroughfare west of the river. From Bluff street west, Western avenue is a steep incline and is paved with brick. A short distance east of Bluff street Western avenue is reduced in width about one-half, the roadway across the bridge being but thirty feet wide. The north line of Western avenue is straight, except that it bears slightly to the north from the west end of the bridge, and the south line of the avenue curves north more than thirty feet to meet the south line of the bridge. A street car track is laid down the middle of Western avenue. The superstructure of the river bridge consists of lattice-work struts about one foot square, standing twenty-three feet apart and braced by tie-rods running from the base of each strut to the top of the next strut. The roadway of the bridge between the rails of the street car track and for one foot outside of each rail is paved with brick and the rest of the roadway is asphalt. On the south side of the bridge, outside the superstructure, is a board sidewalk, the floor of which is seven or eight inches above the roadway. From the north edge of the sidewalk to the south rail of the street car track is about twelve feet.

Appellee testified that he was returning home from an errand downtown with Tommie Alexander; that it was a cold day and that they were running along the sidewalk and were playing tag; that when he was about a fourth of the way across the river bridge Tommie was about to catch him and tag him and he jumped through one of the openings in the superstructure of the bridge and ran into the street; that he looked in both directions before he ran into the street

and saw no vehicle approaching; that Tommie did not follow him and he turned to go back to the sidewalk and saw an automobile coming a few feet away; that the automobile was coming fast and ran over him, rendering him unconscious, breaking his leg and otherwise bruising him; that when the automobile struck him he was standing about a step from the south rail of the street car track.

Thomas Alexander testified that he was sixteen years old; that just before the collision he was chasing Ira along the sidewalk on the south side of the bridge; that he did not see or hear an automobile coming; that Ira ran into the street, and when he was near the street car track an automobile ran over him; that there were long marks on the pavement where the automobile tires slid; that the chauffeur stopped the car, picked Ira up and took him to the hospital.

C. W. Davis, of Peoria, a traveling special agent for a fire insurance company, testified that he was at the southwest corner of Bluff street and Western avenue waiting for a street car; that he was looking west up Western avenue hill; that he saw a large sedan coming down the hill very rapidly; that he had driven automobiles for seven years and knew how to judge speed; that the automobile in question went by him at the rate of forty-five miles an hour; that it went by so fast that he was unable to tell the make of the car or whether it was driven by a man or a boy; that he watched the car cross Bluff street, then turned his head to see if his street car was coming and instantly heard a crash; that he looked toward the bridge and saw a boy rolling from under the automobile; that it was about three-fourths of a block from where he stood to the point of the collision; that he started toward the bridge, but before he reached the scene of the collision the boy had been picked up by the chauffeur and a pedestrian, placed in the car and the car driven away; that there were marks on the asphalt pavement indicating that the car slid twenty feet, and that

the marks did not indicate that the car had turned either to the right or to the left.

John O'Brien, the chauffeur, testified that he was employed by Joseph C. Flowers, appellant; that the automobile he was driving was a Cadillac Eight sedan; that the brakes were in good condition; that he drove down Western avenue hill between fifteen and twenty miles an hour; that he was traveling fifteen miles an hour when he crossed Bluff street; that he was traveling between twelve and fifteen miles an hour when appellee ran off the sidewalk in front of him; that as soon as he saw the boy he applied the service brake; that he did not have time to give an alarm or apply the emergency brake; that the boy was still running when he struck him; that the car stopped immediately after he applied the brake; that he stepped out of the car and found the boy wedged in front of the left rear wheel; that Alfred Stengele, who was walking along the sidewalk at the time of the collision, came to his aid; that he entered the car and backed it to release the boy; that Stengele picked the boy up, put him in the car and they drove with him to St. Joseph's Hospital; that he had driven automobiles for ten years and had not had an accident before this one; that he did not see the boy before he ran into the street and had no opportunity to prevent the collision; that he knew the character of the neighborhood through which he was driving, knew that Bluff street was a business thoroughfare, and knew that there was considerable traffic on Bluff street and Western avenue.

Alfred Stengele testified that he had lived in Joliet about fifteen years; that he is a professional baseball player; that he was walking on the sidewalk of the Desplaines river bridge about 4:30 P. M., January 25, 1921; that he saw two boys running along the sidewalk; that they were playing tag; that the smaller boy ran into the street immediately in front of an automobile; that it struck him and one of the front wheels passed over him; that it stopped with

the boy wedged in front of the left rear wheel; that the driver backed the machine and released the boy; that he picked him up, put him in the machine and drove with him to St. Joseph's Hospital; that he had driven automobiles and could judge speed, and that in his judgment the car was going fifteen miles an hour at the time of the collision.

The court instructed the jury, in the language of section 22 of the Motor Vehicle law, that if the rate of speed of a motor vehicle operated upon any public highway of this State where the same passes through the closely built-up business portions of an incorporated city exceeds ten miles an hour, "such rate of speed shall be *prima facie* evidence that the person operating such motor vehicle is running at a rate of speed greater than is reasonable and proper, having regard to the traffic and the use of the way, or so as to endanger the life or limb, or injure the property, of any person." It is contended that said section 22 is unconstitutional, for the reason that it is an attempt of the legislature to exercise judicial power, that it deprives appellant of his property without due process of law, and that it is special legislation.

The principal argument is that the legislature has declared that the speed limits fixed by the section are absolute and that to exceed these limits constitutes negligence, and that when the jury find the speed of an automobile causing injury to have been greater than that permitted by the statute it must find the defendant guilty, because there can be no evidence to rebut the conclusive probative effect of such evidence, because the statute declares that such speed is greater than is reasonable and proper, having regard to the traffic and the use of the way. This construction of the statute is forced and is contrary to the plain meaning of the words. The legal principles advanced by appellant are well established. The legislature cannot declare what shall be conclusive evidence (*People v. Rose,* 207 Ill. 352,) nor what weight the court shall give to certain evidence, (*Otis*

*Elevator Co.* v. *Industrial Com.* 302 Ill. 90,) but it is clearly within the power of the legislature to prescribe that a fact shall be *prima facie* evidence of a certain other fact if it has a tendency to prove such other fact. (*People* v. *Beck,* 305 Ill. 593; *Continental Beer Pump Co.* v. *Cooke Co.* 299 id. 104; *Chicago Transfer Railroad Co.* v. *City of Chicago,* 217 id. 343.) The only limitation fixed by the statute is that no person shall drive a motor vehicle "upon any public highway in this State at a speed greater than is reasonable and proper having regard to the traffic and the use of the way or so to endanger the life or limb or injure the property of any person." (Laws of 1919, p. 678.) What speed is improper and dangerous is left to the courts to determine from the evidence in each particular case. The section establishes a rule of law, which declares that certain rates of speed in certain localities shall be *prima facie* unreasonable and dangerous. There is no intimation that such rates of speed shall be conclusive proof of negligence. *Prima facie* means first view,—that is, as it first appears. A *prima facie* case is one which is apparently established by evidence adduced by the plaintiff in support of his case up to the time such evidence stands unexplained and uncontradicted. The words *"prima facie,"* when used to describe evidence, *ex vi termini* imply that such evidence may be rebutted by competent testimony. (*Meadowcroft* v. *People,* 163 Ill. 56.) The term *"prima facie* evidence" implies evidence which may be rebutted and overcome, (*People* v. *Mc-Bride,* 234 Ill. 146,) and simply means that in the absence of explanatory or contradictory evidence the finding shall be in accordance with the proof establishing the *prima facie* case. Such a rule does not change the burden of proof, for when all of the evidence introduced in the case is submitted the case is to be determined upon the whole evidence. All the argument of appellant is based upon an erroneous construction of the plain language of the statute and therefore without merit. The statute conforms to the constitution.

It is finally urged that the verdict is against the mani-
fest weight of the evidence, but it is only necessary to read
the testimony to see that the jury were warranted in find-
ing as they did.   In weighing the evidence we must take
into consideration the age of appellee and his capacity to
appreciate danger.   In the absence of proof to the contrary
he will be expected to exercise that discretion and intelli-
gence in protecting himself that would be expected of an
average child of his age under like circumstances.   (*Mc-
Guire* v. *Guthmann Transfer Co.* 234 Ill. 125; *Star Brew-
ery Co.* v. *Hauck,* 222 id. 348; *City of Chicago* v. *Keefe,*
114 id. 222.)   So far as this record shows, appellee had
the right to run into the street at any point he chose.   The
law requires him to exercise due care for his own safety,
and he is expected to enter the street with greater caution
where persons are not ordinarily expected to enter than at
intersections.   On the other hand, a person operating a mo-
tor vehicle along the streets of a city is bound to recognize
the fact that children will be found playing in the street
and that they may sometimes attempt to cross the street
unmindful of its dangers, and the driver owes the children
the duty of reasonable and ordinary care under the circum-
stances.   The uncontradicted evidence of appellee is that he
looked before he ran into the street and that no automobile
was in sight, and that as he turned to return to the sidewalk
an automobile came upon him suddenly and he was unable
to avoid being hit.   If appellant's servant was traveling at
the rate of forty-five miles an hour three-fourths of a block
from the point where the collision occurred he would have
traversed the space in four or five seconds.   As we have
said, he was traveling east on the south side of Western
avenue, and the south line of the avenue curves in to ac-
commodate itself to the narrower roadway of the bridge,
so that an automobile crossing Bluff street would be slightly
out of the range of vision of one passing through the south
superstructure of the bridge.   It is no doubt true that the

automobile was not traveling more than fifteen miles an hour when it struck appellee, but it had slid twice its length on a dry pavement before it reached that point. Appellee had a right to assume that motor vehicles using the roadway of this bridge would be driven at a lawful rate of speed. (*Soucie* v. *Payne*, 299 Ill. 552; *Dukeman* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 237 id. 104.) The jury had a right to conclude from the evidence submitted that a rate of speed in excess of ten miles an hour across Bluff street,—a busy thoroughfare in the business portion of the city,—was unreasonable and dangerous under the circumstances and therefore unlawful, and that the injury to appellee was the direct result of such unlawful driving. When a motor vehicle is proceeding along at a lawful speed and is obeying all the requirements of the law of the road and all the regulations for operation of such machine, the driver is not, as a general proposition, liable for injuries received by a child who darts in front of the machine so suddenly that its driver cannot stop or otherwise avoid the injury; but if one is running his automobile at a speed in excess of the statutory limit or at an unreasonable or dangerous speed, he cannot escape liability because the child who is injured ran in front of the automobile so suddenly that the accident was then unavoidable. (Huddy on Automobiles,—5th ed.—sec. 419; Annotation—Duty and liability to persons struck by automobile while crossing street at unusual place, 14 A. L. R. 1176.) Appellee stated that he looked before he entered the space reserved for vehicles, but granting that he did not stop and look, it cannot be said, as a matter of law, that the failure to look will bar a recovery. (*Heidenreich* v. *Bremner*, 260 Ill. 439; *Winn* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 239 id. 132.) It is a question of fact for the jury to determine, in view of all the surrounding circumstances, whether the failure to look constitutes lack of due care. In order to make a negligent act the proximate cause of an

injury it is not necessary that the particular injury and the particular manner of its occurrence could reasonably have been foreseen. If the consequences follow in unbroken sequence from the wrong to the injury without an intervening efficient cause, it is sufficient if at the time of the negligence the wrongdoer might by the exercise of ordinary care have foreseen that some injury might result from his negligence. *Illinois Central Railroad Co.* v. *Siler,* 229 Ill. 390.

Complaint is made of the refusal by the court of two instructions tendered by the appellant. The principles of law announced by these instructions were fully covered by other given instructions. Taking all the instructions as a series, the jury were fully and properly instructed with respect to the law applicable to the issues in this case.

The judgment is affirmed.      *Judgment affirmed.*