Jessie Hunt, Appellant, v. Olive Morris, Individually, and as Executrix Under the Last Will and Testament of John Barnes, Deceased, Appellee.

Gen. No. 35,720.

Opinion filed March 28, 1932.

WILLIAM H. HERBERT and CHARLES GOODMAN, for appellant; CHARLES GOODMAN, of counsel.

BRADLEY, HARPER & KIGGINS and JOSEPH H. NICOLAI, for appellee; THOMAS E. D. BRADLEY and SAMUEL A. HARPER, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Complainant filed her bill seeking to set aside the will of John Barnes, deceased, alleging that she was his daughter and only heir at law. The issue of this relationship was heard by the chancellor who held that she was not his daughter and heir at law and hence was not "person interested," to which class of persons the right to contest the validity of a will is limited by section 7, chapter 148, Statute of Wills, Cahill's St. ch. 148, ¶ 7, her bill was ordered dismissed and she appeals from this order. The section under which the proceeding was brought is, in part, as follows:

"That if any person interested shall within one (1) year after the probate of any such will, testament or codicil in the County Court as aforesaid, appear and by his or her bill in chancery contest the validity of the same, an issue at law shall be made up whether the writing produced be the will of the testator or testatrix or not, which shall be tried by a jury in the Circuit Court of the county wherein such will, testament or codicil shall have been proven and recorded as aforesaid, according to the practice in courts of chancery in similar cases. . . ."

The crucial question is whether the evidence adduced proved that complainant was the daughter of John

Barnes, deceased. Complainant offered in evidence the record of the probate court, finding that she was an heir at law and next of kin of John Barnes, deceased, and also (both counsel assert) all the evidence that was introduced in the probate court upon this matter.

Complainant in this court asserts that the order of the probate court finding that complainant was an heir at law is *res adjudicata*. As stated in her brief, that ''No matter how erroneous that finding may have been, or even absurd—though it may have been made in palpable violation of the law and manifestly against the evidence or wholly unsupported by the evidence—it is nevertheless binding upon the defendant unless reversed on appeal or in a direct proceeding instituted to set it aside.'' There are two sufficient answers to this. The issue of *res adjudicata* was not raised in the pleadings. Complainant did not allege that the order in the probate court was *res adjudicata*. A sworn plea and answer was filed denying her heirship and denying that she was a ''person interested in the will.'' No replication was filed to the sworn answer. A bill to contest a will is a chancery proceeding. *Anderson v. Anderson,* 293 Ill. 565. In equity when *res adjudicata* is relied upon it must be pleaded. *Williams v. Williams,* 265 Ill. 64.

A second and more definite answer is found in section 3 of the Administration Act (Cahill's Rev. St. ch. 3, ¶ 148) which provides, ''That such orders of the court, declaring such heirship, whether heretofore or hereafter made, shall be deemed and taken as prima facie evidence of such heirship: Provided, that any other legal mode of proving such heirship may be resorted to in any place or court where the question may arise by any party interested therein.'' Under this provision the parties were at liberty to introduce any legal evidence on that issue. *Prescott v. Ayres,* 276

Ill. 242; *Dowling v. Gilliland,* 275 Ill. 76; *Kelly v. Kelly,* 285 Ill. 72. Complainant's brief emphasizes the case of *Healea v. Verne,* 343 Ill. 325, as supporting her contention that the order of the probate court is *res adjudicata.* We do not so read the opinion in that case. There had been an appeal to the circuit court from the order of the probate court as to the heirship and the order of the probate court was reversed. On appeal to the Appellate Court the judgment of the circuit court was affirmed. It was held that the trial in the circuit court was *de novo* and that the judgment of the Appellate Court was *res adjudicata* on the question of heirship. That is quite different from holding that the order of the probate court is *res adjudicata.* Section 7 of the Statute of Wills, Cahill's St. ch. 148, ¶ 7, confers complete jurisdiction on the circuit court upon all questions in the contest of a will, including the question of whether the person instituting the contest is a "person interested." All these questions are heard in the circuit court *de novo* and without regard to the order entered in the probate court. *Henline v. Brady,* 110 Ill. App. 75. In *Dowling v. Gilliland,* 275 Ill. 76, it was held by the circuit court that the judgment of the probate court admitting a will to probate not having been appealed from, was *res adjudicata* and conclusive. The Supreme Court did not agree with this and reversed the circuit court.

Prima facie evidence of heirship simply means that which is apparently established by evidence and implies that this may be overcome by competent testimony. *Morrison v. Flowers,* 308 Ill. 189; *Anlicker v. Brethorst,* 329 Ill. 11.

The first order in the probate court upon the question of heirship was made December 29, 1926, finding that deceased had left his mother, the only heir at law and next of kin. On February 28, 1929, an order was entered vacating and setting aside this prior order and

finding that Jessie Hunt (the complainant here) was his daughter. Upon the trial in the circuit court both sides repeatedly stated that all of the evidence presented in the probate court was before the chancellor.

We are of the opinion that the evidence presented fails to show that complainant was an heir at law of John Barnes, the deceased, but shows otherwise. The first certificate shows the birth of a John Barnes in the Subdistrict of Syston in the county of Leicester, England, on July 5, 1856. The next document is a marriage certificate purporting to show that John Barnes was married on January 24, 1876, to Elizabeth Adams in the District of Poplar, county of Middlesex, England. The certificate describes this John Barnes as being of "f-age." Counsel for complainant says this means "full age." As the John Barnes referred to in the birth certificate was born July 5, 1856, he would not be of "full age" at the time of this marriage. Apparently these two documents do not pertain to the same person. The marriage certificate describes John Barnes as an engineer.

The next document is a birth certificate of the complainant, Jessie Hunt. In this certificate her father's name is given as John Barnes and he is described as a "marine engineer." In the deposition of Mary Jane Jones she says that she knew John Barnes, the deceased, for many years; that she heard that he was born in Syston, Leicester county, England. This would seem to indicate that this was the same John Barnes named in the birth certificate of July 5, 1856, although it is not conclusive. Mary Jones says that John Barnes was brought up by her parents as their own child; that he never knew that he was not their child; that he was in the drug business; that when they came to America her father put him in the drug business on Halsted street in Chicago. She was not asked and does not testify as to whether John Barnes was ever married

or whether he ever had any child or children. The deposition was procured *ex parte* by complainant for use in the probate court, and it is significant that the witness was not asked these important questions. It seems to be conceded that the John Barnes in question was a chemist in the drug business. There is nothing to indicate that he is the same John Barnes who is described in the marriage certificate as an ''engineer'' or in complainant's birth certificate as a ''marine engineer.'' The occupation of a marine engineer is so remote from that of a chemist or druggist as to amount to affirmative proof that these men are not the same.

The name John Barnes is a very common name. Counsel for defendant states that there are 15 of them in the Chicago telephone directory. In *Lewandowski v. Zuzak,* 305 Ill. 612, Joseph Lewandowski and his sister attacked the will of Michael Lewandowski; they produced certificates showing the birth of the same parents in Leczyca of Jozef and Michal Lewandowski; there was evidence that the testator, Michael, came from Leczyca. This evidence was held insufficient to prove the relationship of the complainants with the testator. If, as the opinion states, the fact of the identity must be established by other evidence, it would certainly require other and better evidence to establish the identity of anyone of such a common name as John Barnes.

We are of the opinion that the evidence not only failed to show that complainant was an heir at law of the deceased and a ''person interested,'' but that it affirmatively shows to the contrary.

The order of the chancellor was proper and is affirmed.

*Affirmed.*

O'CONNOR, P. J., and MATCHETT, J., concur.