### COMMONWEALTH vs. RUFUS B. BRADFORD

If a party who is indicted on the Rev. Sts. c. 4, § 6, for wilfully giving in a vote at an election, knowing himself not to be a qualified voter, admits, on his trial, that he voted at the election, it is equivalent to an admission that he voted wilfully.

On the trial of a party indicted for wilfully giving in a vote at an election, knowing himself not to be a qualified voter, when the only question is, whether he had resided in the town where he voted six months next preceding the election, evidence that he had resided in another town until within seven months of the election does not put upon him the burden of showing that he had changed his residence, but the burden of proof to support the indictment remains on the Commonwealth.

Evidence that a party consulted counsel as to his right to vote, and submitted to them the facts of his case, and was advised by them that he had the right, is admissible in his favor, on the trial of an indictment against him for wilfully voting, knowing himself not to be a qualified voter, but is not conclusive evidence that he did not know that he was not a qualified voter

THE defendant was indicted for voting in the city of Boston, at the general election, on the 11th of November 1844; and the indictment alleged that he was not, then and there, a legal and qualified voter, and that he had not, before the said election on the day aforesaid, resided in the Commonwealth one year, and within said city six months next preceding said day ; and that he, then and there, knowing himself not to be a qualified voter at said election, did, in ward number five of said city, wilfully give in a vote for the officers then to be chosen.

---

* By St. 1845, c 27, provision is made for the punishment of the offence with which the defendant was charged in this case.

The defendant was tried and found guilty in the municipal court, and the case came into this court on the following bill of exceptions: " It was admitted by the defendant that he voted in ward five, on said 11th of November, and the only question was that of his domicil. There was evidence tending to prove that the defendant had resided, for many years, in Kingston in this State, and was a resident there until on or about the 1st of April 1844, when he came to Boston, and entered into partnership and business, with the express understanding that he should make that place his residence ; that he continued in Boston, from said 1st of April till the day of the election, with occasional returns to Kingston, where his family remained till a short time previous to the election, when they came to Boston, where they have since resided. There was also evidence tending to show that the defendant's family were sick and unable to be removed, until about the time when they came to Boston ; and there was conflicting evidence as to the defendant's intentions and declarations respecting his domicil.

" It was also in evidence that the defendant's name was on the voting list of said ward, and that, on the day he voted, and previously to voting, he had taken legal advice of several counsel, and was advised that he had a right to vote ; and there was further evidence to show that he intended, at the time of his removal, and afterwards, to vote in Boston, provided he had a legal right so to do.

" On this evidence, the presiding judge instructed the jury as follows: 1st. That the admission of the defendant, that he did vote at the election in question, was equivalent to an admission that he did ' wilfully,' that is, designedly, vote therein. 2d. But it being apparent, by the testimony on both sides, that the defendant's domicil was in Kingston, until he acquired one in the city of Boston, the burden of proof was upon the defendant to satisfy the jury, affirmatively and beyond a reasonable doubt, that, on the 11th day of May 1844, he had changed his domicil from Kingston to Boston, and there dwelt, and had his home in that city. 3d. But the

23 *

fact, that the defendant had consulted counsel, with reference to his right to vote, and had received an affirmative answer, could not be regarded as negativing a knowledge, on his part, of his want of the legal qualification to vote."

*C. G. Davis,* for the defendant.

*S. D. Parker,* for the Commonwealth.

SHAW, C. J. This indictment is founded on the Rev. Sts *c.* 4, § 6, which provide that, " if any person, knowing himself not to be a qualified voter, shall, at any election, wilfully give in a vote for any officers to be then chosen, he shall forfeit a sum not exceeding $100, for each offence."

Several exceptions were taken to the decisions of the municipal court, upon which the cause has been brought here.

1st. That the admission, that the defendant voted at the election, was sufficient to support the averment that he voted wilfully. It appears, by the bill of exceptions, that it was admitted by the defendant that he did vote, in the fifth ward, at the election and on the occasion stated ; his name being on the voting list.

Considering the manner in which the word " wilfully " is used in the statute, the court are of opinion that this was right. It may sometimes mean corruptly or unlawfully ; but in this section, where the gist of the offence consists in the other clause, " knowing himself not to be a legal voter," the term " wilfully " means designedly, purposely, with an intent to claim and exercise the right of suffrage, on that occasion, in common with the legal voters of the city.

2. The question was, whether the defendant had resided six months in the city, when he thus voted ; being one of the necessary constitutional qualifications. It was admitted, or proved, that he had had his domicil in Kingston, in this State, till about the 1st of April preceding, and the question was, whether he had acquired a domicil in Boston, at or before the 11th of May last, being six months before the election. It being proved that his domicil was thus at Kingston, the court instructed the jury, that the burden of proof was on the defendant, to satisfy them, affirmatively and beyond a reason-

able doubt, that, on the 11th of May last, he had changed his domicil from Kingston to Boston, and there dwelt, and had his home in that city.

The court are of opinion that this direction was wrong, and that the burden of proof was still on the government, to prove that the defendant had no right to vote, and that. he had not been an inhabitant of the city six months. This, it is true, is a negative proposition, difficult to prove, but necessary, in order to charge a party with a criminal offence. But there are some rules applicable to such a case, which, in some measure, relieve this difficulty. If slight evidence be given of the negative proposition, and the fact be of such a nature that it would be obviously in the power of the other party to give full and ample proof on the subject, and he gives none, the slight evidence would become strong and cogent proof of the negative. If, for instance, a person should present himself as a voter and an inhabitant, and some evidence be given that he has not been known or seen here, till a recent period; proof that he first came to a lodging within the city, within a few days or weeks previous to the election ; that he was not before known to those persons who would be likely to know all resident inhabitants — such as police officers, tax collectors, persons employed to collect names for a directory, and the like — and he should offer no proof on the subject, such proof being manifestly within his power ; it would be strong evidence, in support of the negative to be proved, that he had not been a resident inhabitant. Some maxims, too, on the subject of domicil, are to be taken into consideration, and probably were regarded, by the learned judge, as sufficient to change the burden of proof. These are, that a person can have but one domicil at one time ; that he must have a domicil somewhere ; and that one domicil continues until another is acquired.

That the defendant had been domiciled at Kingston, until a recent period, was a material fact, and, combined with other slight proof — such as that his family continued at Kingston, that his residence at Boston was casual, temporary, and for a

special purpose — especially if the defendant should offer no evidence, would all be proper and competent evidence to a jury, from which, if uncontrolled, they might infer that his domicil was at Kingston, and of course not in Boston, where he voted. But after all the evidence on both sides, bearing upon the question, has been submitted to the jury, to be considered in connexion with the maxims, rules and presumptions, in regard to domicil, it is for the jury to be satisfied, on the whole evidence, in order to warrant a conviction, that the defendant had not had his home in Boston six months; and they should have been so instructed.

3. One other exception was taken. The judge directed that the fact that the defendant had consulted counsel, with reference to his right to vote, and had received an affirmative answer, could not be regarded as negativing a knowledge, on his part, of his want of the legal qualification to vote.

In order to convict a party, under this statute, which is extremely liberal in this respect, it is necessary to prove, not only that the party had no right to vote, but that he knew it. As this qualification depends upon domicil, and that is often a complicated question of law and fact, we have no doubt, that if the voter, in good faith, and with an honest purpose to ascertain the right, shall make a true statement of the facts of his case to a professional man, or any other man of skill and experience, capable of advising him correctly, the evidence of such advice, and the facts upon which it was taken, are competent, as bearing upon the question whether he knew that he had not a right to vote. For although the jury, with the aid of all the evidence laid before them, with the lights thrown upon it by an exposition of the rules of law, may be satisfied that he had not the qualification of residence, and of course had not a right to vote, yet they may also be satisfied that he did not know that he was not a legal voter; and the means he took to inform himself have a direct bearing upon this last question. The direction of the court upon this point was, that the fact that the defendant had consulted counsel as to his right to vote, and received an affirmative

answer, could not be regarded as negativing a knowledge, on his part, of his want of the legal qualification to vote.

This language is not perfectly clear, and we have had some little difference of opinion as to its true meaning. If the judge intended to say that it had no tendency to negative such knowledge, we think it was incorrect. But if, as it seems more probable from the language and the circumstances, the judge intended to say that this evidence was not conclusive — was not sufficient of itself to negative such knowledge, if controlled by other satisfactory proof — we think it was correct. But on the ground of the second exception, the court are of opinion, and do order, that the verdict be set aside and a new trial had at the bar of this court.