(Nos. 19295, 19285.—

FREDERICK C. ALDRICH, Trustee, Appellee, *vs.* GEORGE F. HARDING, County Collector, Appellant.—JOSEPHINE H. DOUGLAS, Appellee, *vs.* GEORGE F. HARDING, County Collector, Appellant.

*Opinion filed June 20, 1930—Rehearing denied October 10, 1930.*

Robert E. Crowe, and Louis H. Geiman, (Hayden N. Bell, of counsel,) for appellant.

Scott, Bancroft, Martin & MacLeish, (Lester L. Falk, Charles M. Price, Joseph W. Townsend, and Leland K. Neeves, of counsel,) for appellees.

Per Curiam: Frederick C. Aldrich, trustee, filed a bill in the circuit court of Cook county against George F. Harding, county treasurer and *ex-officio* county collector of Cook county, to enjoin the collection of taxes for 1927 on certain real estate of the complainant in Cook county. A demurrer to the bill was overruled, and the defendant having elected to stand by it, a decree was entered granting the relief prayed for, and the defendant has appealed.

The bill alleged that the complainant in 1927, the year of the quadrennial assessment of real estate, and for some years before, was the owner of the real estate in question, consisting of 13.6 acres of vacant land at Homan avenue and Thirty-first street, in Chicago, and contained the following allegations:

For many years the taxing authorities of the State of Illinois generally have disregarded the provisions of the statutes which require an assessment to be based upon the full, fair cash value of property, and have deliberately and intentionally valued real property for purposes of assessment at less than its full value. In 1919 the State Tax

Commission raised the valuations in all counties where the value was fixed by the local assessor at less than 40 per cent and lowered it in all counties where the valuation was higher than 50 per cent of the cash value, by adding or deducting a per cent for equalization that would bring the equalized value of lands in the several counties to a valuation between 40 and 50 per cent of the fair cash value of the lands in each county, and since that time the average valuation for purposes of assessment of real property throughout the State of Illinois outside of Cook county has been about 40 per cent of full value and in the year 1927 remained at substantially 40 per cent of full value. The board of assessors and board of review of Cook county, Illinois, in the year 1927 and for many years prior, have likewise deliberately and intentionally failed to value real estate for purposes of assessment at its fair cash value but have deliberately and arbitrarily assessed it at less than its fair cash value. Some of the real property in Cook county is now assessed at less than five per cent of its fair cash value and other real property at more than 150 per cent of its fair cash value. These differences in valuation and assessment of real property do not arise as the result of the exercise of any honest judgment but are the result of an arbitrary and willful placing of values by the board of assessors and the board of review. In 1927 the assessed valuation of real property in Cook county outside of Chicago averaged approximately 25 per cent of the full value. The average assessed valuation in Chicago in 1923 was 34.5 per cent; in 1924, 31.9 per cent; in 1925, 31.2 per cent; in 1926, 31.3 per cent; in 1927, 35.9 per cent of full value.

There is no uniform assessment or valuation of real property in Cook county or Chicago. In 1927, in the towns in the county outside of Chicago, the town assessors made a valuation of the property within their respective towns and assessed such property on the basis of 15 to 30 per cent of full value, the average being 25 per cent. In Chicago,

outside of the down-town district, it is the practice of the board of assessors to divide the city into five districts and to assign to each of the five assessors the task of making land valuations in his district. Valuation is determined by each assessor individually, without the application of any uniform rule or method, or, in fact, of any rule or method whatsoever. In determining assessments for his district the assessor acts independently and upon his own resources and on his own private opinion of values and conditions in the district. Usually the assessor assesses the land in the district in which he has his political roots. It is not the practice of the board or of the assessors to maintain a file of information bearing on land values, and frequently the only information which the assessor possesses is the assessments of the preceding quadrennial. He therefore copies those figures. In 1927 no effort was made to obtain an intelligent appraisal of all real property in Chicago to determine its fair cash value. The valuations determined by the individual assessors were not intended even to represent full value or any uniform fixed percentage of full value. The assessors, it is charged, actually intended to, and in fact did, under-value most of the property, but without system or uniformity, with the result that some property was grossly over-valued and some property grossly under-valued, so that the amount of taxes which any particular parcel, block or district of land was called upon to pay depended solely on the individual assessor's whim, the amount of the former assessment, the character of the community, the use to which the land was put, and, frequently, the ownership. Complainant charges, upon information and belief, that the board of assessors, without any independent consideration as a board, accepted the valuations and assessments thus made by the individual assessors without the exercise of any judgment with respect thereto by the board of assessors, and that the board of review confirmed substantially all such valuations

without consideration thereof but acted thereon as a matter of form. The bill also alleged the board of assessors and board of review knew that for years it had been the practice throughout the State to assess real property at 40 per cent of its value, but despite this knowledge the assessing authorities assessed complainant's property at 145 per cent of its value. The board of review and board of assessors planned to make unequal and un-uniform assessments in Cook county, and as a part of their plan withheld publication of the assessment lists on the express ground that such publication would reveal the inequalities and lack of uniformity in assessment and enable tax-payers to obtain relief from illegal and unlawful assessments; that knowing the average of assessments of real estate throughout the State was 40 per cent of the full value, the authorities stated publicly that they would assess residence property at 25 per cent of its full value and business property at 60 per cent; that with the knowledge of average assessments throughout the State and being charged with the duty of equalizing assessments, the members of the board of review stated that on certain down-town streets the assessed value was as high as 80 per cent and in some cases 100 per cent of full value.

The valuation of property for taxing purposes must be the result of honest judgment and not of mere will. (*Chicago, Burlington and Quincy Railroad Co.* v. *Cole,* 75 Ill. 591.) An assessing body has the right, and it is its duty, to exercise its own judgment in determining values, but it has no right to fix a valuation by its will, alone, without the exercise of judgment. (*People* v. *Stewart,* 315 Ill. 25.) In *Pacific Hotel Co.* v. *Lieb,* 83 Ill. 602, the court said that where "the valuation is so grossly out of the way as to show that the assessor could not have been honest in his valuation—must reasonably have known that it was excessive—it is accepted as evidence of a fraud upon his part against the tax-payer, and the court will interpose." In

*People's Gas Light Co.* v. *Stuckart,* 286 Ill. 164, the court said an over-valuation of property may be so excessive and made under such circumstances as to justify the conclusion that it was not honestly made and was known to be excessive. It was further stated that "a willful disregard by the members of the board of a known duty for the purpose of producing a result which could not otherwise have been produced may be urged against an assessment as a fraud." According to the allegations of the bill, appellee's property was assessed at 145 per cent of its actual value and more than three and one-half times the assessed value in the State generally. The demurrer, of course, admits the allegations of the bill as to the facts. In *State Board of Equalization* v. *People,* 191 Ill. 528, a petition for *mandamus* was filed to compel the State Board of Equalization to assess the property of certain corporations. The respondents offered no evidence on the hearing but urged the petitioners failed to make a case. This court held otherwise, and said: "The respondents, however, saw fit to rest their case upon the law and to entirely ignore the facts, and we are of the opinion that the court, upon this record, not only properly held the law, but also the facts, against them."

Under the numerous decisions of this court the property owner is entitled to a fair and honest exercise of judgment in assessing property. Where intent or design is sought to be shown or is materially involved, consideration may always be given to collateral facts and circumstances. In *Bottomley* v. *United States,* 1 Story, 135, the question of the defendant's fraudulent intent in under-valuing imports was involved and evidence was offered of similar instances. The court held the evidence was competent, and said: "In most cases of conspiracy and fraud the question of intent or purpose or design in the act done, whether innocent or illegal, whether honest or fraudulent, rarely admits of direct and positive proof but it is to be deduced from various circumstances of more or less stringency and

often occurring, not merely between the same parties but between the party charged with the conspiracy or fraud and third persons; and in all cases where the guilt of the party depends upon the intent, purpose or design with which the act was done or upon his guilty knowledge thereof, I understand it to be a general rule that collateral facts may be examined into in which he bore a part, for the purpose of establishing such guilty intent, design, purpose or knowledge. * * * In short, wherever the intent or guilty knowledge of a party is a material ingredient in the issue of a case, these collateral facts tending to establish such intent or knowledge are proper evidence." This principle has been recognized by this court in *Taylor Coal Co.* v. *Dawes,* 220 Ill. 145, *Blalock* v. *Randall,* 76 id. 224, and *Lockwood* v. *Doane,* 107 id. 235.

In *Taylor* v. *Louisville and Nashville Railroad Co.* 88 Fed. 350, the court, by Mr. Justice Taft, said the whole assessment on all classes of property was to be regarded as but one judgment, and that if fraud entered into such judgment anyone injuriously affected thereby had the right to complain, "and this is true although the particular assessing board assessing the complainant's property may have been wholly free from fault, of fraud or intentional discrimination." In the instant case it is apparent that the differences in value of the various kinds of property could not have been the result of differences of opinion but were arbitrary and willful on the part of the taxing authorities. The allegations of the bill, we think, satisfactorily show that appellee could not have obtained relief against the arbitrary, willful and apparently fraudulent assessments made, in any proceeding before the taxing or reviewing bodies and he necessarily sought a court of equity in which to proceed.

In *Hills* v. *Exchange Bank,* 105 U. S. 319, the court said it was unnecessary to show that the objecting taxpayer had executed and filed affidavits or demands, as required under the New York statute in order that he might

offset debts against the value of his bank stock. The court said: "It is a general rule that when the tender of performance of an act is necessary to the establishment of any right against another party, this tender or offer to perform is waived or becomes unnecessary when it is reasonably certain that the offer will be refused—that payment or performance will not be accepted. * * * Without elaborating the matter, we are of opinion that, considering the decision of the Court of Appeals of New York, the action of the assessors in the case of Williams and their own testimony in this case, it is entirely clear that all affidavits and demands for deduction which could or might have been made would have been disregarded and unavailing, and that the assessors had a fixed purpose, generally known to all persons interested, that no deductions for debts would be made in the valuation of bank shares for taxation."

Appellant states that the bill is divisible into two parts, one of which makes up the volume of the bill and consists of general allegations of fraud and inequality against all the assessments in Cook county for the year 1927 and years prior thereto, and have no relation to the assessment complained of except that such assessment is one of the total of assessments for one of the years embraced in the condemnations of the bill. Appellant says the other allegations relate to the assessment complained of and are in the form of general conclusions. Appellant contends it is necessary, in order to enjoin a tax on the ground of fraud, that the complainant show affirmatively he has exhausted his legal remedies before the reviewing board. Fraud is an independent ground for the exercise of equitable jurisdiction. (*Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 561; *Chicago, Burlington and Quincy Railroad Co.* v. *Cole, supra.*) In this case the bill alleges facts which constitute fraud in the assessment of appellee's property, and of that subject the court will take jurisdiction. The bill alleges, among other allegations, that the board of review

and the board of assessors deliberately and intentionally refused to publish the assessment list for the purpose of preventing equal and non-discriminatory taxes. That allegation of fact is admitted by the demurrer. By their action the assessing authorities defeated the remedy of appellee for pursuing his course of law. Under the facts alleged in the bill appellee had the right to resort to a court of equity.

Appellant insists that to sustain the bill in this case will have the effect of invalidating as fraudulent all the assessments of Cook county in the year involved and will be *res judicata* against the tax collector in case of all taxes involved in the bill. The bill in this case seeks to enjoin the collection of the tax upon appellee's property, in which no other person is concerned. The only thing litigated is the validity of the assessment on appellee's property, and a decision of that question cannot operate as *res judicata* as to any other tax-payer or any other property. One tax-payer may seek relief as to his own property and the other tax-payers may not do so. The allegations of the fraudulent practices of the assessor and board of review were for the purpose of showing fraud in them and not a direct attack upon all of the taxes levied against everybody during that time.

Another case (*Douglas* v. *Harding,* No. 19285,) has been consolidated with this case. The bills and facts are substantially the same except the names of the complainants and description of the property. The determination of this case controls the decision of the *Douglas case.*

We are of opinion that the bill was a good bill and stated a cause of action for fraudulent assessment of appellee's property. The demurrer admitted the facts pleaded, and under them the law sustains appellee's right to the relief sought, and the trial court properly overruled appellant's demurrer and awarded an injunction to appellee as prayed in his bill.

The decrees are affirmed.

*Decrees affirmed.*