In re CHICAGO RYS. CO. et al.

PEOPLE OF STATE OF ILLINOIS v. SULLIVAN et al.

Nos. 9699, 9732.

United States Court of Appeals Seventh Circuit.

June 16, 1949.

John S. Boyle, State's Attorney, and Melvin F. Wingersky, Assistant State's Attorney, Chicago, Ill. (Gordon B. Nash and Meyer H. Goldstein, Assistant State's Attorneys, Chicago, Ill., of counsel), for appellant.

Thomas Dodd Healy and Harold Stickler, Chicago, Ill. (Thomas G. Bugan, Chicago, Ill., of counsel), for appellees.

Arnold R. Baar, Chicago, Ill., amicus curiae.

Before KERNER and DUFFY, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

In the course of the consolidated proceedings for reorganization of the debtors comprising the corporations owning and operating the surface transportation system in the City of Chicago and commonly known as the Chicago Surface Lines, the State of Illinois filed its timely claim averring that the state tax authorities had duly levied against the tangible personal property of the debtors taxes for 1946 of $2,563,056.47 and that the debtors had paid $1,632,727.29, leaving a balance due of $950,329.20, plus accrued penalties of $76,026.33. The trustee objected, averring that the tax had been based upon assessed valuations totaling $93,205,214.00, consisting of the original assessment by the assessor of $58,619,631, which had then been multiplied by 1.5900, designated by the Revenue Department of Illinois as the proper multiplier under the tax laws of the State, thus increasing the assessment to $93,205,214; that the assessment was so grossly arbitrary and unfair as to be fraudulent, illegal and void and as to deprive the debtors of equal protection under the law as guaranteed by the Fourteenth Amendment of the Constitution; and that when the assessor made the basic assessment of $58,619,631 he failed and neglected to give the Trustee notice of the same as required by Section 104 of the Revenue Act of Illinois, as amended. Ill.Rev.Stat. Chap. 120, § 585. The objections set forth in detail other facts and circumstances under which the trustee asserted that the debtors had paid all taxes legally due and that the claim for the uncollected portion should be denied.

The court, after hearing the evidence, entered an order containing findings and conclusions and, subsequently, adopted additional and supplemental findings and conclusions, finding that the assessment was illegal and void in that it deprived the debtors of property without due process of law; that it was so grossly in excess of the fair cash value of the tangible personal property of the debtors as to be illegal, arbitrary, fraudulent and in violation of the Illinois statutes and Section 1 of Article IX of the State Constitution, Smith-Hurd Stats.; and that the amount previously paid by the debtors was more than was legally due and owing by them for personal property taxes for 1946. From the order denying the claim, the state has perfected this appeal.

Essentially the issues presented to us are, first, whether the bankruptcy court, under the facts and circumstances of the record, was endowed with lawful power to enter the order from which the appeal was taken; and, second, whether, if so, the evidence is sufficient to justify the court's findings, conclusions and order. These two questions, as will be seen from our later discussion, are inextricably interwoven because the answer to each is dependent upon the evidence, for there are, of course, limitations upon the power of the bankruptcy court to interfere with taxes levied by the state and that court is empowered to inquire into the validity of an assessment only if the proof is sufficient to bring the case within well established rules of law.

As required by law, Section 47 et seq. of the Ill.Revenue Act of 1939, Ill.Revised Stats. Chap. 120, § 528 et seq., the debtor filed tangible personal property tax returns for 1946 accompanied by supporting schedules showing full fair cash value of their tangible personal property, before any deduction, of $49,640,138. This return was not only in accord with the statute but also with the direction of the assessor as follows: "Schedules A, B, C and D call for owner's full valuation, and also provide for a column for the Assessor's valuation. This is the equalized assessed value and is to be filled in by the assessor. In returning their property, taxpayers must report full, fair cash values. Taxpayers failing to report a full, fair cash value do not furnish an adequate or uniform basis for determining the equalized amount."

It is undisputed that the assessor actually in the year involved did reduce and

for many years previously had reduced the full value of tangible personal property of all other corporate taxpayers, including machinery and equipment, by 30%. In other words, all other corporate taxpayers' returned valuations at full fair cash value were reduced by 30%, yet, upon final assessment, the assessor did not accord to debtors the same treatment but, instead of assessing their property at 70% of its full cash value as he did that of other corporate taxpayers, assessed it at a full 100%. It matters not whether the assessor was justified, under the constitution and statutes of Illinois, in allowing to any corporate taxpayer such a deduction or debasement, for, as the Supreme Court of Illinois in People's Gas Light & Coke Co. v. Stuckart, 286 Ill. 164, 121 N.E. 629, 632, said: "Where assessors have disregarded the injunction of the law and made an assessment of property far below its real cash value, their misconduct must also follow the principle of uniformity, and their assessments of all persons must be at the same proportional value." This, as the court said, is true because "The great central and dominant idea of the [Illinois] Constitution is uniformity of taxation."

Again the same court said, in People v. Commonwealth Edison Co., 376 Ill. 70, 32 N.E.2d 902, 905: "Clearly, such a method of valuation, as compared with the method used as to other like property, violated the constitutional and statutory requirements as to uniformity. Section 24 of the Revenue Act, Ill.Rev.Stat. 1931, chap. 120, par. 24, as in force at the time this assessment was made, requires that the assessor, in valuing property of corporations, shall be governed by the same rule of uniformity that he adopts as to values in assessing other personal property. * * *" It is apparent, therefore, that there can be no legal justification for this discrimination, this inequality, arising from assessing plaintiff's property at its full value when that of other corporate taxpayers was assessed at 70% thereof.

Not only did the assessor thus discriminate against the debtors by failing to extend to them the benefit of the same adjustment allowed other corporate taxpayers, but he also added to the full fair cash value three other items aggregating $8,979,493. The first of these was an arbitrary addition of 5% and 10% to the original purchase price of machinery, material and equipment going into the capital account of debtors purely as an arbitrary addition made in pursuance of an ordinance of the City of Chicago of 1907 which had ceased to have any relevance or effect long prior to the making of the present assessment. That ordinance, originally adopted with the end in view of enabling the city to purchase the assets of the debtor corporations, had provided that, in making such a sale, this arbitrary addition to actual cost might be included in the purchase price, in view of the fact, apparently, that the expense had been incurred by the debtor in procuring the property. Such expense of course, under proper methods of accounting, is purely one of doing business. We are supplied with no authority that any justification exists in the law for the inclusion, years later, of such an item in the assessment of tangible personal property, which, under the constitution and laws of the state of Illinois, is to be assessed at its full fair cash value.

To the returned fair cash value, the assessor added also a sum for "foundation for paving" in the amount of $2,041,764, yet the record contains no justification whatever for the inclusion of this as tangible personal property of the debtor subject to taxation. Indeed, in the case of People v. Chicago Railways Co., 369 Ill. 128, 15 N.E.2d 705, 707, the court held that pavement supplied by the company under the laws of Illinois was not taxable, saying: "Although the companies pay taxes on the component material while in their possession prior to being incorporated into the paving strips, such material does not retain the character of taxable tangibles when laid in the street. It then becomes an integral part of the pavement and belongs to the city. Upon the termination of the contract, by exiration or any other means, the companies would have no right to remove the paving strips." What is true of pavement, as property, of course, must be equally true of its foundation, and if, as the Illinois Supreme Court has said, the company has no title to or right to remove

the paving it certainly has no title to and no right to remove the underlying foundation, for to do so would destroy the pavement itself. In other words, pavement includes not only the surface but also the foundation for the surface.

Included in the more than eight million dollars added by the assessor was a decrease in the depreciation allowance of 1¼ per cent. The assessor deducted this of his own accord without any evidence; he made no inspection, examined no property, and had the benefit of no check-up of any character upon the depreciated property. He apparently merely concluded in his own mind that the depreciation taken was too large and, arbitrarily taking a figure out of the clear sky, reduced it. It was, as the Supreme Court of Illinois said in People v. Commonwealth Edison Co., supra, "arbitrary guesswork, lacking in required uniformity and amounting to fraud in law." In that case as in this, the assessor had made no inspection but had arbitrarily refused to accept the company's depreciation; in that case, as in this, no evidence was presented as to the fair cash value of the personal property involved other than the fair cash value returned by the taxpayer, yet, in each, the assessor arbitrarily added the item mentioned.

Thus it is undisputed that the debtors filed returns showing the full fair cash value of their tangible personal property in accord with the laws of Illinois; that other corporate defendants were allowed a debasement factor of 30%, resulting in their assessment at 70% of full fair cash value; that, taxpayers' property, receiving no such deduction, was assessed at 100% of its fair cash value; that, not only did the assessor thus discriminate against the debtors by failing to give to them the equality demanded by the constitution and statutes of Illinois, but, in addition thereto, arbitrarily included in the assessment the foundation for pavement, an item for expenses in procuring property under an inapplicable ordinance and an item for depreciation unjustified by any inspection or investigation, all aggregating some eight million dollars. Had the debtors been accorded the same privilege as other taxpayers, the full fair cash value of the prop-

erty would have been reduced for assessment to approximately $34,500,000 by the deduction of the 30% debasement factor and, if, as we have concluded, the item of over eight million dollars of arbitrary additions unauthorized by law were eliminated, the assessed value, instead of being $58,000,000 as fixed by the assessor, would have been less than $35,000,000. Indeed, the District Court, after hearing evidence as to the value of the property taxed, found that the full fair cash value was approximately $36,000,000 and that in the following year the assessor himself fixed the value at $44,000,000. There is no evidence to impugn these figures. On the basis of debtors' returned full fair cash value, that value was $49,640,138, less the deduction allowed to others, or a net of less than $35,000,000. Under the evidence submitted to the court, the full fair cash value was found to be actually $36,000,000, and yet the assessor, arbitrarily and without justification under the statutes or constitution of Illinois, under the repeated decisions of the Supreme Court of this state, arbitrarily fixed the assessment of $58,619,631. Then, when the Revenue Department of the State supplied a multiplier of 1.59, the assessed value became over $93,000,000.

But, says the state, the bankruptcy court had no jurisdiction, no authority to go back of the assessor's findings; that mere difference of opinion as to valuation is no justification for impeachment of the assessor's figures. With this statement no one can quarrel, for it is elementary that when a taxing authority has, in accord with the law, fixed a value which is not attacked by any subsequent attempt to review the same in authorized administrative or court proceedings which the taxpayer has had opportunity to avail himself of, its findings as to value must be upheld. Such is the law as to findings and orders of administrative bodies quite generally.

The court of bankruptcy has complete power to dispose of all questions arising as to liens upon property within its custody, to allow or disallow claims, to determine "the validity and amount" of all claims and to decide all controversies with regard to the bankruptcy estate. U.S.C.A. Title 11, Sections 1 and 11. In pursuance

of these powers, the court is endowed. as a court of equity with full authority to dispose of all issues raised in the course of the proceedings upon claims. In Arkansas Corporation Commission v. Thompson, 313 U. S. 132, 61 S.Ct. 888, 85 L.Ed. 1244, the court held that the bankruptcy court was without authority to relitigate, de novo, issues as to property valuation already adjudicated in state judicial or quasijudicial proceedings which afforded ample protection of the debtor's rights. In other words, the conclusion of the Supreme Court was that the amount of the assessment determined by an administrative body in due. course of proceedings, after hearing, could not be reviewed by the Bankruptcy Court. This is in strict accord with the ordinary rule in such cases, for even a state court of equity, we think, in the absence of statutory authority, has no power to review the determination of values by the administrative body, if there is such an available remedy. Here, as we have shown, the court found that the assessment fixed was so in excess of real value as to be fraudulent; that upon undisputed evidence the taxpayers have been denied that equality and uniformity required as between taxpayers and that, the assessor has arbitrarily, without warrant of law, included in his assessment some $8,-000,000, not represented by any property of the debtors. The decisive issue here is whether, under such circumstances, the District Court was without power to prevent this violation of the constitution and laws of the state of Illinois.

■ We think it beyond question that the District Court, upon the issues presented, had precisely the same jurisdiction that a court of equity in the state of Illinois would have had, had bankruptcy not intervened. Consequently we must look to the decisions of the state to ascertain whether such a court of equity is, in the state of Illinois, empowered to grant the relief granted here under the circumstances of record. As we have observed, the law is well settled that if the statutes of the state provide an adequate remedy for the correction of a discriminatory, fraudulent assessment, the taxpayer must exhaust that remedy and that a court of equity may not intervene until and unless the taxpayer has

exhausted or has been wrongfully deprived of the opportunity to avail himself of it. Thus, in Keokuk & Hamilton Bridge Co. v. Salm, 258 U.S. 122, 42 S.Ct. 207, 208, 66 L.Ed. 496, the Supreme Court held that the lower court of equity was without jurisdiction, in view of the fact that, under the statutes of Illinois, the taxpayer had a remedy before the board of review, which it had not exhausted. After referring to the Illinois statute, Ill.Rev.Stat. 1919, c. 120, § 329, which provides that upon complaint that an assessment is incorrect, the board of review shall grant a hearing and correct the assessment "as shall appear to be just," the court said: "Here the alleged invalidity consists wholly in discriminatory overvaluation; and, so far as appears, appellant did not even apply to the board of review to correct the assessment."

■ So, here, the debtors had a statutory right to apply for and obtain a hearing as to the validity of the assessment, and in case of refusal to act, or in case of denial of legal relief, a right to resort to mandamus to enforce the remedy, People ex rel. McDonough v. Cesar, 349 Ill. 372, 182 N.E. 448, for taxpayers may not waive their right to relief provided by the statute and then resort to judicial relief. But, as said in Bistor v. McDonough, 348 Ill. 624, 181 N.E. 417, where the valuation is fraudulent and the claimant has not waived his right to statutory relief, the assessment is subject to judicial review. The law of Illinois in this respect is made clear by the decision in Aldrich v. Harding, 340 Ill. 254, 172 N.E. 772, 775. There a fraudulent assessment was enjoined because of lack of notice thereof to the taxpayer, which would have given him an opportunity to avail himself of his statutory remedy. The court said: "Appellant contends it is necessary, in order to enjoin a tax on the ground of fraud, that the complainant show affirmatively he has exhausted his legal remedies before the reviewing board. Fraud is an independent ground for the exercise of equitable jurisdiction. Porter v. Rockford, Rock Island & St. Louis Railroad Co., 76 Ill. 561; Chicago, Burlington & Quincy Railroad Co. v. Cole, supra, [75 Ill. 591]. In this case the bill alleges facts which constitute fraud in the assessment of ap-

pellee's property, and of that subject the court will take jurisdiction. The bill alleges * * * that the *board of review* and the *board of assessors* deliberately and intentionally *refused to publish the assessment list* for the purpose of preventing equal and nondiscriminatory taxes. That allegation of fact is admitted by the demurrer. By their action *the assessing authorities defeated the remedy of appellee for pursuing his course of law.* Under the facts alleged in the bill appellee had the right to resort to a court of equity" (Italics supplied.)

It is apparent, therefore, that decision as to the power of the bankruptcy court, sitting in equity, to grant the taxpayers relief must turn upon the question of whether the debtors have waived their statutory right to relief or have been deprived, without their fault, of an opportunity to invoke it.

The Illinois statute contemplates and requires notice to every taxpayer of his personal property assessment. Section 104, Ill.Rev.Stat. Chap. 120, § 585, imposes upon the assessor the duty to mail a printed copy of the assessed valuations of personal property to every taxpayer assessed. Notice of an assessment long after it is made does not "meet the constitutional requirement of due process of law." People v. Shirk, 252 Ill. 95, at page 98, 96 N.E. 841, at page 842. In Lindheimer v. Nelson, 369 Ill. 312, at page 316, 16 N.E.2d 734, 737, in discussing a reassessment made without the required statutory notice, the court said: "Every person has a right to be informed of the value placed upon his property by the assessor, in order that he may, if aggrieved, appeal to the board which has the power to revise and correct the assessment. People v. Sweitzer, 339 Ill. 28, 170 N.E. 728. Notice to the property owner is jurisdictional and must precede any change or reassessment of property after an assessment has once been made. An assessment made without notice or opportunity for hearing, which would be conclusive upon the taxpayer, would be invalid. People [ex rel. Edgar] v. National Box Co., 248 Ill. 141, 93 N.E. 778; Carney v. People, 210 Ill. 434, 71 N.E. 365. If the taxpayer here had received notice of the assessment of

the land as improved, within the time provided by statute, and there had been no previous valuation of the land for the particular year in question, then the argument of the State's attorney that the taxpayer should have applied to the board of appeals for any desired correction would have force. Here, the assessment was made and subsequently changed without notice to the taxpayer. The circuit court was right in holding that the tax * * * was invalid, and its decree is affirmed."

As we have seen, the trustee, in his objections to the claim of the state, asserted specifically that the assessor had "failed and neglected" to comply with his statutory duty as defined by Section 104. The evidence discloses that the first notice that an increase in the returned valuations had been made by the assessor in the spring of 1947 was in the form of debtors' personal tax bill received a year later, long after the board of appeals' jurisdiction and its power to review the assessor's assessments of 1946 had expired. The trustee's representative charged with responsibility for debtor's personal property assessments testified that he received no earlier notice of the increase, and the deputy assessor, who for a number of years had had charge of personal property assessments, testified that he "did not know" whether the statutory notice had been given. The state did not cross-examine either of these witnesses and offered no proof that the notice had been sent as required by law.

In Morrison v. Flowers, 308 Ill. 189, 139 N.E. 10, 12, the court said: "A prima facie case is * * * established by evidence adduced by the plaintiff in support of his case up to the time such evidence stands unexplained and uncontradicted. The words 'prima facie,' when used to describe evidence, ex vi termini imply that such evidence may be rebutted by competent testimony. Meadowcroft v. People, 163 Ill. 56, 45 N.E. 991, 35 L.R.A. 176, 54 Am.St.Rep. 447. The term 'prima facie evidence' implies evidence which may be rebutted and overcome (People v. McBride, 234 Ill. 146, 84 N.E. 865, 123 Am.St.Rep. 82, 14 Ann. Cas. 994), and simply means that in the absence of explanatory or contradictory evidence the finding shall be in accordance

with the proof establishing the prima facie case." In Williams v. People, 121 Ill. 84, at page 90, 11 N.E. 881, at page 882 the court approved Greenleaf's statement that "Where the subject matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true, unless disproved by that party." To the same effect is Great Western R. Co. v. Bacon, 30 Ill. 347, 83 Am.Dec. 199. We do not need to resort to this extreme doctrine here, for there is at least prima facie proof of the averment. But we do adhere to the principles expressed in Prentice v. Crane, 234 Ill. 302, at page 311, 84 N.E. 916, at page 919: "The effect of a negative form of issue in cases involving charges of fraud is not to relieve the party making such charge of the burden of introducing any proof, but the law will be satisfied with a less quantity of proof; and this is particularly so where there is the concurring circumstance of the facts being within the knowledge of the adversary party. Evidence which renders the existence of the negative probable may be sufficient in the absence of proof to the contrary. Jones on Evidence, § 178. * * * 'Full and conclusive proof, however, where a party has the burden of proving a negative, is not required, but even vague proof, or such as renders the existence of the negative probable, is in some cases sufficient to change the burden to the other party. People v. Pease, 27 N.Y. 45, 84 Am.Dec. 242; Commonwealth v. Bradford, 9 Metc. 268 [50 Mass. 268]; 1 Greenleaf on Evidence, § 80.' "

 In the present state of the record we think the only conclusion justified is that the notice was not mailed as required by Section 104. The state was advised by the pleading that the trustee claimed that the assessor had neglected or had deliberately failed to send the statutory notice. Whether notice had been given was peculiarly within the knowledge of the tax authorities. The state's failure to supply any rebuttal evidence can lead to only one inference, namely, that it had no such proof. This, coupled with the denial of receipt of notice, justifies only the conclusion that no notice was given, until after opportunity of the debtors to avail

themselves of the statutory remedy had ceased to exist. Thus, under the decision in Aldrich v. Harding, supra, by such action "the assessing authorities defeated the remedy" of the debtors provided by law, and a court of equity may and should intervene to defeat a fraudulent discriminatory assessment, which the debtors had no opportunity to attack by any other method.

 It is clear then that the bankruptcy court, sitting in equity, had jurisdiction, and had full power to do complete justice between the parties. Thus, in People ex rel. McCallister v. Keokuk & Hamilton Bridge Co., 287 Ill. 246, 122 N.E. 467, the court said that where an assessment shows a discrimination which could not have reasonably arisen from error of judgment, the courts will give relief. Where an overvaluation is shown to be so excessive and made under such circumstances as to justify only the conclusion that it is discriminatory and there is a willful disregard by the taxing authorities to perform their constitutional duty of providing uniformity and equality of taxes, and the court has jurisdiction, the resulting assessment, being fraudulent, may be enjoined. See also People's Gas Light & Coke Co. v. Stuckart, 286 Ill. 164, 121 N.E. 629; Raymond v. Chicago Union Traction Co., 207 U.S. 20, 28 S.Ct. 7, 52 L.Ed. 78, 12 Ann.Cas. 757; Pacific Hotel Co. v. Lieb, 83 Ill. 602; People v. Keokuk & Hamilton Bridge Co., 287 Ill. 246, 122 N.E. 467. In People ex rel. Miller v. Chicago, B & Q. R. R. Co., 300 Ill. 399, 133 N.E. 325, 327, Mr. Justice Carter said: "Taxing authorities have no justification in withdrawing any property from the protection of the constitutional principles of uniformity of taxation, as uniformity of taxation is required under the Constitution, and * * * a person cannot be compelled to pay a greater proportion of taxes, according to the value of his property, than another property owner * * * an arbitrary violation of the rule of uniformity is an invasion of constitutional right and will not be tolerated."

 The law of Illinois is summed up in the following excerpt from Aldrich v. Harding, 340 Ill. 354, 172 N.E. 772, where the court said: "The valuation of property

for taxing purposes must be the result of honest judgment and not of mere will. Chicago, Burlington & Quincy Railroad Co. v. Cole, 75 Ill. 591. An assessing body has the right, and it is its duty, to exercise its own judgment in determining values, but it has no right to fix a valuation by its will, alone, without the exercise of judgment. People ex rel Carr v. Stewart, 315 Ill. 25, 145 N.E. 600. In Pacific Hotel Co. v. Lieb, 83 Ill. 602, the court said that where 'the valuation is so grossly out of the way as to show that the assessor could not have been honest in his valuation—must reasonably have known that it was excessive—it is accepted as evidence of a fraud upon his part against the tax-payer, and the court will interpose.' In People's Gas Light Co. v. Stuckart, 286 Ill. 164, 121 N.E. 629, 633, the court said an overvaluation of property may be so excessive and made under such circumstances as to justify the conclusion that it was not honestly made and was known to be excessive. It was further stated that 'a willful disregard by the members of the board of a known duty for the purpose of producing a result which could not otherwise have been produced may be urged against an assessment as a fraud.' "

▮▮▮ Consequently we conclude that under the law of the state of Illinois, a court of equity has the right to interfere in cases such as that presented here; that there can be no question that the court of bankruptcy, sitting as a court of equity, has the same authority and that the facts fully justify its order. That debtors were deprived of equal protection is apparent from Hillsborough Tp., Somerset County, v. Cromwell, 326 U.S. 620, 66 S.Ct. 445, 448, 90 L.Ed. 358, where the court said: "The equal protection clause of the Fourteenth Amendment protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class. The right is the right to equal treatment."

▮▮ The state's suggestion that this is in effect a suit against the state of Illinois without its consent was answered by the Supreme Court in Gardner v. New Jersey, 329 U.S. 565, 67 S.Ct. 467, 472, 91 L.Ed. 504, thus: "It is traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure (citing a case). If the claimant is a State, the procedure of proof and allowance is not transmuted into a suit against the State because the court entertains objections to the claim. The State is seeking something from the debtor. No judgment is sought against the State. The whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a res. It is none the less such because the claim is rejected in toto, reduced in part, given a priority inferior to that claim, or satisfied in some way other than payment in cash. When the State becomes the actor and files a claim against the fund it waives any immunity which it otherwise might have had respecting the adjudication of the claim."

Much has been said in the briefs and arguments as to the validity of the so-called "Butler" laws, Chap. 120, Ill.Rev.Stats, § 528 et sequi and as to the legality of the act of the Revenue Department of the State of Illinois, in pursuance of those statutes, in fixing the multiplier of 1.59 for all property in Cook County. The trustee claims in behalf of the debtors that that multiplier was determined from a consideration solely of real estate values with no evidence whatever as to whether it was proper upon assessment of personal property and that, therefore, this action, too, was illegal. We do not reach these questions, for their decision is unnecessary to an adjudication of the merits of the order of the trial court.

The District Court found that the debtors had paid more than they actually owed and consequently denied the claim of the state for recovery of the balance. We think there is no question but that the debtors, though they have paid even more than they were legally liable to pay, have no right in this case, at least, to recover anything they had paid over and above what was legally due. The assessment having been illegal, the tax due, assessed upon the true fair cash value of $34,000,000 according to the assessor's method of taxing, or upon $36,000,000 according to the lower

court's finding, even though multiplied by the 1.59, would have resulted in a tax less than what has been actually paid. Consequently, any question as to the constitutionality, interpretation and application of the Butler laws or as to the validity of the action of the Revenue Department in fixing the multiplier for personal property at the same figure as that fixed for real estate is wholly beside the point.

For the reasons enumerated, the judgment is affirmed.