LarryLee Wolpert by Marion C. Wolpert, His Next Friend, and Marion C. Wolpert, Individually, Plaintiffs-Appellants, v. John Vernon Heidbreder, Defendant-Appellee.

Gen. No. 10,204.

Third District.

May 15, 1959.

Released for publication June 2, 1959.

Luther Dearborn, of Lincoln, and Robert H. Brunsman, of Springfield, for plaintiffs-appellants.

Gillespie, Burke & Gillespie, of Springfield (George B. Gillespie, Frederick H. Stone, of counsel) for defendant-appellee.

JUDGE CARROLL delivered the opinion of the court.

Plaintiffs appeal from a judgment on a not guilty verdict in a personal injury action. Recovery is sought by LarryLee Wolpert, a minor (whom we will refer to as the plaintiff) for injuries allegedly caused by defendant's negligence in operating a Chevrolet pickup truck and for medical and hospital expenses incurred in treating said injuries by plaintiff's father, Marion C. Wolpert.

At the time he was injured, plaintiff was 6 years of age and lived with his parents whose home was located on the North side of Fifth Street in Lincoln, Illinois. Fifth Street runs East and West. The Wolpert home is the third house West of Walnut Street, which runs North and South and intersects Fifth Street. Proceeding West from the Wolpert home, Fifth Street is intersected by Pine, Elm and Mill Streets in the order named, each making a "T" intersection with Fifth Street. The next street West of Mill Street is College Street which crosses Fifth Street. On the afternoon of February 21, 1955, after returning from school, plaintiff went to purchase some candy at a store on Fourth Street which was one block South of Fifth Street and two blocks West of the Wolpert home. In returning from the store, he walked two blocks East on Fourth Street to Pine Street and then to a point on the South side of Fifth Street opposite the Wolpert home where he stopped. He looked both ways and saw a car coming from the West. He waited until the car passed and reached Walnut Street. He then again looked both ways and started to cross Fifth Street on an angle in the direction of his home. As he was near the center line of the street, he was struck by a truck driven by defendant and sustained serious injuries.

The plaintiff contends that the trial court erred in instructing the jury, in ruling upon the admission of certain evidence and exhibits relating thereto and that

the verdict is contrary to the manifest weight of the evidence.

■ Plaintiff complains of the giving of defendant's Instruction 8, which is as follows:

"It is not every accident that makes the operator of a motor vehicle liable. If the operator of a motor vehicle is in the exercise of that degree of care and caution as a reasonable prudent person would exercise under like or similar circumstances and an accident nonetheless occurs, then such an accident is what would be termed as unavoidable accident and the person is not liable for an accident which is unavoidable within the definition contained in this instruction."

This instruction should not have been given unless there was some evidence that plaintiff was injured through accident alone not coupled with negligence. Streeter v. Humrichouse, 357 Ill. 234; Crutchfield v. Meyer, 414 Ill. 210; Williams v. Matlin, 328 Ill. App. 645. The evidence shows the accident occurred at about 3:45 o'clock in the afternoon; that the sun was shining and visibility good; that Fifth Street is 30 feet wide; and in the accident scene area, runs through a built-up residential portion of the City; that plaintiff stood at the curb on the South side of Fifth Street; that he looked both ways and saw a car coming from the West which was then West of Pine Street; that he waited until this car passed him and reached Walnut Street; that he then again looked both ways and seeing no cars approaching started to cross the street at a trot. Velma Coonce, a disinterested witness, testified that at the time of the occurrence, she was walking West on the South side of Fifth Street; that she saw plaintiff walking East on the South side of Fifth Street; that he went down to cross the street and stood at the curb; that she saw him look to the West: that she saw him wait until a car coming from the West reached Walnut Street; that plaintiff watched

said car as it went East; that he then started across the street walking fast which the witness described as being a "trot" on an angle towards his home; that when he was about in front of the house immediately West of his home and on the North side of Fifth Street near its center line, he was hit by the defendant's truck. This witness gave an opinion that when the truck struck plaintiff, it was going 40 miles per hour. She also testified she heard no horn or indication of application of brakes and that after the impact the truck went forward about 50 feet.

The defendant testified that he was 16 years of age at the time of the accident; that he was driving a Chevrolet truck which he had driven since June, 1954 when he received his driver's license; that he was returning from school and was accompanied by Kenneth Paulsen and Russell Farmer; that he was driving between 20 and 25 miles per hour; that the accident happened a little West of the Wolpert house; that he saw a car coming from the West; that he first saw this West bound car at Pine Street; that only a split second intervened between the time the car going East passed the truck and the collision with plaintiff; that he did not see plaintiff prior to the accident nor did he know of the accident until he felt a thud on the left rear wheel; that he looked in the rear view mirror and saw plaintiff lying in the street; that he immediately applied his brakes; that the truck came to a stop 50 feet from where he felt the thud; that there were no cars parked on Fifth Street in the vicinity of the accident and no other moving traffic except the single East bound car; that he first saw the East bound car when it was on Pine Street and the truck was then about to enter Walnut Street; that immediately prior to the accident he was looking straight ahead and was watching the road ahead at the time of the thud. Russell Farmer, who was riding with defendant, saw a car coming from the West which

passed the truck; that the accident happened a second after the East bound car passed; that he did not see plaintiff before the accident and that the truck was going 20 to 25 miles per hour when it came in contact with plaintiff. Kenneth Paulsen, who was seated between defendant and Farmer, testified that a fraction of a second before the accident, he saw the top of plaintiff's head at the left front door of the truck; that he felt a thud and immediately thereafter defendant applied his brakes and that he felt the thud on the back fender. This witness also testified to seeing the East bound car and that 5 or 10 seconds after it passed the truck the accident occurred.

Photographs introduced in evidence show an unobstructed view of the spot where plaintiff was standing for a distance of 390 feet on Fifth Street.

█ Thus the uncontroverted evidence is that the plaintiff was standing at the curb waiting to cross Fifth Street in plain view of defendant when the latter saw the oncoming car at Pine Street; that plaintiff remained at the curb until the East bound car reached Pine Street. The evidence further shows that defendant's view of the street where plaintiff stood was unobstructed during all the time required for the East bound car to travel the block between Pine and Walnut Streets. The failure of defendant to see plaintiff before the other car passed his truck is unexplained in the evidence. This absence of any reasonable explanation of defendant's failure to see that which the evidence shows was clearly visible to him compels the conclusion that he failed to keep a proper lookout. Accordingly, it cannot be said there was any evidence that plaintiff's injury was the result of accident alone and under authority of Streeter v. Humrichouse, supra, it was error to give this instruction.

In defending the giving of such instruction, defendant relies principally upon the well established rule that each party to an action is entitled to have the

491

jury instructed upon his or her theory of the case if there was evidence supporting such theory and cites Parkin v. Rigdon, 1 Ill.App.2d 586; Kurzawa v. Brummel, 14 Ill.App.2d 473; Piggott v. Newman, 334 Ill. App. 75. In the Parkin case, the driver testified that he saw the plaintiff but not until the exact moment of impact or a split second before. In the Kurzawa case, the plaintiff was the only occurrence witness. The defendant's testimony which was corroborated by a disinterested witness, was that plaintiff ran into the road from behind a parked car when defendant was 2 or 3 car lengths away. In each of the cited cases, the court held that since there was evidence in support of plaintiff's theory that the injury occurred without negligence on his part, the giving of an unavoidable accident instruction was justified. These decisions, however, lend no support to defendant's argument and do no more than emphasize the rule that a party's theory of the facts may be the subject of an instruction only when his evidence tends to prove such facts. In the instant case, there is no evidence tending to prove defendant's theory that plaintiff ran into the street from behind a car. Defendant testified that he did not see plaintiff at any time prior to the latter's injury. Obviously, defendant's suggestion as to what plaintiff did is not evidence.

 By Instruction No. 10, the jury were told in substance that if defendant was operating his truck with due care and after the appearance of plaintiff in the street was made in such a manner that defendant did not have an opportunity to observe danger to plaintiff so that in the exercise of reasonable care he could have avoided plaintiff, then the jury should find defendant not guilty. There is no evidence in the record that plaintiff's appearance in the street was made in such a manner that defendant could not see him. On the contrary, the defendant stated he knew

nothing about the accident until after it happened. It is only where the evidence shows an unusual or unexpected occurrence arising without fault of the party involved, that the above instruction may be given. No such showing was made in this case. McLaren v. Byrd, Inc., 296 Ill. App. 345; Sullivan v. Heyer, 300 Ill. App. 599; Savina v. National Brick Co., 314 Ill. App. 199 (Abst.). The evidence discloses that defendant was driving his truck on a street in a closely built-up section of the City of Lincoln. In such situation the driver of a motor vehicle is bound to recognize the fact that children sometimes attempt to cross the street unmindful of its dangers and has the duty to exercise reasonable and ordinary care under such circumstances. Morrison v. Flowers, 308 Ill. 189.

■ We are of the further opinion that Instruction 10 is subject to the additional criticism that it invades the province of the jury. It tells the jury what acts constitute due care and directs a verdict without making any reference to other facts and circumstances shown by the evidence which might be controlling in the case. Peremptory instructions of this character have been repeatedly condemned. Coukoulis v. Schwartz, 297 Ill. App. 377; Peters v. Madigan, 262 Ill. App. 417; Adamsen v. Magnelia, 286 Ill. App. 412.

■ We are of the opinion that in this case, the giving of Instruction No. 10 is reversible error.

The trial court permitted the introduction of expert testimony as to the distance within which the truck could be stopped at various speeds and the expert witness gave an opinion that to come to a stop within 50 feet, the truck would have had to be traveling at 15½ miles per hour. There was also admitted in evidence certain charts or formulae relating to stopping distances which the witness used in evolving his opinion as to the truck's rate of speed prior to the accident. The defendant and his two companions tes-

■■■■■■■■■

tified that the truck was going 20 to 25 miles per hour when it struck plaintiff. The witness Coonce fixed its speed at 40 miles per hour. There were no skid marks or other evidence as to where the truck stopped. After the accident, the truck was driven away and sometime later the defendant and his companions returned it to the scene and placed it where they thought it had originally stopped. They then stepped off the distance from the truck to bloodspots left on the pavement by the injured plaintiff and by using such procedure they reckoned the distance which the truck traveled after striking plaintiff to be 50 feet. Defendant also testified that after the accident he stopped the truck the fourth house West of the Wolpert home. The photographs in evidence show the location of the fourth house referred to by the witness to be far more than 50 feet from where the plaintiff was struck.

Plaintiff contends that the court erred in admitting the expert testimony on the question of stopping distances and speed and also in admitting the formulae and other data which the expert witness used in arriving at his opinion. With this contention we are inclined to agree. Defendant testified as follows: "I accelerated the truck with a foot-feed and I kept my foot at a constant level as I proceeded to the scene of the occurrence right up until after I felt the thud." "I looked in my rear view mirror and saw a little boy lying there and I applied my brakes immediately with a full application until I came to a stop." Thus, according to defendant's own statement, no question as to stopping distance arose until after plaintiff had been injured. If defendant were contending that plaintiff came into his vision so abruptly that despite application of brakes or other precautionary measures, he could not avoid the impact which followed, then there might arise a question as to whether defendant

494

could have stopped his vehicle in time to have avoided striking plaintiff. However, no such contention was made in this case. The defense relied upon was that defendant, by reason of meeting another car, was prevented from observing plaintiff before the impact. We think it clear that under the evidence, the distance which plaintiff required to stop his truck was not an issue.

■ ■ It follows that the testimony of the expert witness could have been introduced for no other purpose than to show the speed of the truck prior to the occurrence. On the question of speed, four witnesses who actually observed the truck in motion, gave their opinions as to its speed. In such a situation, it is obvious that there was no necessity for resorting to expert testimony. The expert witness fixed the speed of the truck at 15½ miles per hour and we think this was equivalent to taking from the jury the right to determine the issue of speed from the evidence. The fact that there was a conflict in the evidence as to speed of the truck did not create any necessity for expert testimony on this subject, which was well within the knowledge of the jury. Under such circumstances, the jury may well have been led to believe that it must accept the expert's testimony as being decisive on the question as to how fast the truck was being driven. In Young v. Patrick, 323 Ill. 200, relied upon by defendant, the court makes it clear that expert testimony was competent in that case on the question of stopping distance but not for the purpose of showing the exact speed of the car involved. Admission of the expert's testimony was not warranted.

Having reached the conclusion that this case must be retried, we refrain from discussion of other claimed errors since their occurrence on another trial is unlikely.

495

For the reasons herein given, the judgment is reversed and the cause remanded to the circuit court for a new trial.

Reversed and remanded.

ROETH, P. J. and REYNOLDS, J., concur.