SCOTT SYRCLE, Special Adm'r of the Estate of Catherine E. Syrcle, Deceased, Plaintiff-Appellant, v. ROBERT SPRINGER, Defendant-Appellee.

Fourth District   No. 4—92—0296

Opinion filed December 30, 1992.

Grady E. Holley, of Holley Law Office, of Springfield, for appellant.

Kent R. Schnack, of Schnack, Schnack & Cashman, of Quincy, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Scott Syrcle, father of six-year-old Catherine Syrcle, deceased, and special administrator of her estate, filed a wrongful death action on behalf of her estate against defendant Robert Springer in Pike County circuit court. At trial a jury ruled in favor of defendant. Plaintiff seeks a new trial, arguing the trial judge committed reversible error because (1) he was not allowed to pursue his theory of the case, and (2) the judge accepted defendant's jury instruction that negligence does not arise merely because an accident has occurred. Plaintiff also argues (3) reversible error occurred because defense counsel repeatedly referred to defendant's grief and sorrow about the accident. No reversible error occurred.

## I. FACTS

Decedent was killed on April 29, 1987, while riding her bicycle near her home. There were no eyewitnesses to the incident. Defendant was performing farming operations near the scene of the accident, which occurred at approximately 6:30 p.m. It was a generally clear evening and the sun was shining brightly. The accident occurred in rural Pike County, Illinois, at a "T" intersection. The road extending north to south ends at the "T."

## A. *Trial Testimony*

### 1. Accident Site

Both the north-south and the east-west roads were unpaved. The east-west road is flat and level while the north-south road slightly inclined downward as it intersected the east-west road. Plaintiff and his wife Cheryl lived in a home approximately 150 yards east of the scene of the accident. The accident occurred on the east-west road. Plaintiff's mailbox was located just west of the "T" intersection.

The night the accident occurred the Syrcles had finished supper and plaintiff and Cheryl were outside doing chores. Cathy informed her mother she was going to ride her bicycle down to the mailbox to pick up the mail. Plaintiff and Cheryl saw Cathy as she headed toward the east-west road which intersects with the north-south road.

### 2. Defendant's Testimony

Defendant was returning from his farm, which is located north of the scene of the accident. He was driving a tractor with a water wagon attached to it, followed by an attached 14-foot-wide field cultivator. According to defendant, he was travelling south at approximately 13 to 13½ miles an hour when he approached the "T" intersection.

Defendant's view to the left was obstructed by a bank, a hedge row, a fence, a tree, and some brush on the north-east corner of the "T" intersection. Because of the width of the field cultivator, he swung the tractor to the far left side of the road so he could turn right at the "T" intersection without going off the roadway. Defendant testified he slowed the tractor to make the turn. He did not remember whether he stopped at the intersection, but he knew he looked both directions before proceeding.

Defendant is effectively blind in his left eye, but this disability reportedly did not affect the accident. Upon questioning by plaintiff's counsel, defendant explained he injured his eye when he was a child. He had farmed all his life without this disability affecting his work and he had been a truck driver for five years.

### 3. Additional Testimony

Jean Hoover testified on plaintiff's behalf. She described herself as a neighbor of the Syrcle family and a longtime friend of defendant and his wife. She lived approximately a quarter of a mile north of the "T" intersection. She saw defendant's tractor travelling south the

night in question, but she did not see Cathy or the impact which caused her death. Hoover testified defendant did not stop his tractor at the intersection before he turned right.

Decedent's mother Cheryl also testified she saw defendant approach the "T" intersection and turn right without stopping. Defendant was travelling quite fast when he approached the intersection and he did not slow down before he turned.

Witnesses in addition to defendant testified the view to the left of the "T" intersection (which was the direction in which decedent was travelling) was obstructed. Hoover travelled the road nearly every day. She testified that when the accident occurred, a row of hedges obstructed the view for drivers travelling south when they looked to the left (to the east).

Illinois State trooper Lawrence Drennan, who investigated the accident scene and drafted an accident report, concluded southbound drivers' view to the east was obstructed by bushes and trees.

According to defendant, when he looked to the left before turning, he did not see Cathy. It was not until he had completed his turn and looked back that he saw Cathy being dragged in the tines of his cultivator.

Teresa Robinson, Cheryl's sister, stopped at the accident scene after leaving the hospital the night of the accident. At the scene she saw a pool of blood approximately 8 to 10 inches from the mailbox, located mostly in the gravel or traveled portion of the roadway.

Upon questioning by defense counsel, Jeri Sue Springer, defendant's daughter-in-law, testified she went to the accident scene immediately after the accident and observed drag marks in the intersection. Trooper Drennan concluded decedent's body was lying approximately 1½ feet north of the southerly edge of the east-west road. Drennan also indicated there were smudge marks from the tire of decedent's bicycle on the water tank which was attached to the tractor.

### 4. Post-Accident Observations

After the accident occurred, defendant and a neighbor brought Cathy to the Syrcle residence. Plaintiff took Cathy in his arms and his neighbor drove them to the hospital in Pittsfield, Illinois. Plaintiff testified Cathy's arms were limp. She was bleeding from her nose, mouth, arms, ears, and from the back of her head. Cathy had gravel imbedded in her clothing and in her knees, arms and ears. Cheryl similarly described Cathy's condition.

## B. *Plaintiff's Allegations*

Plaintiff's original complaint alleged defendant was negligent for failing to yield the right-of-way to Cathy at the intersection in violation of section 11—901.01 of the Illinois Vehicle Code. (Ill. Rev. Stat. 1987, ch. 95½, par. 11—901.01.) The allegation was later included in an amended and a second-amended complaint. However, the trial judge struck the allegation. Although the order does not indicate the judge's reason for doing so, defendant had argued in his motion to dismiss the count that the duties outlined in section 11—901.01 did not apply to defendant's duty to Cathy because she was on a bicycle, which was not a "vehicle."

Plaintiff later requested leave to file a third-amended complaint containing the right-of-way allegation, but the trial judge reserved ruling until the conclusion of the evidence, and never made a formal ruling on plaintiff's request. Plaintiff's tendered jury instruction on the right-of-way allegation and his burden of proof instruction related to this allegation were denied.

Defendant tendered a nonpattern instruction advising the jury no presumption of negligence arises from the mere happening of an accident. Plaintiff's objection to this instruction was overruled. The jury returned a verdict in favor of defendant. This appeal followed denial of post-trial motions.

## II. ANALYSIS

### A. *Plaintiff's Instruction*

Plaintiff sought to provide the jury an instruction pursuant to Illinois Pattern Jury Instructions, Civil, No. 60.01, regarding violation of a statute. (Illinois Pattern Jury Instructions, Civil, No. 60.01 (3d ed. 1992) (hereinafter IPI Civil 3d).) The pertinent statute, which was incorporated into plaintiff's instruction No. 25, states:

> "Vehicles approaching or entering a 'T' intersection. The driver of a vehicle approaching the intersection of a highway from a highway which terminates at the intersection, not otherwise regulated by this Act or controlled by traffic control signs or signals, shall stop, yield, and grant the privilege of immediate use of the intersection to another vehicle which has entered the intersection from the non-terminating highway or is approaching the intersection on the non-terminating highway in such proximity as to constitute a hazard and after stopping may proceed when the driver may safely enter the intersection

without interference or collision with the traffic using the non-terminating highway." Ill. Rev. Stat. 1987, ch. 95½, par. 11—901.01.

The trial judge rejected this instruction, and plaintiff argues the trial judge committed reversible error in doing so.

Defendant argues plaintiff waived review of this issue because he failed to obtain the trial judge's ruling as to whether the right-of-way allegation could be added to his third-amended complaint.

Waiver also allegedly occurred because plaintiff included this allegation in his earlier pleadings, but *did not* include it in his third-amended complaint. Finally, defendant contends waiver occurred because plaintiff included only a general argument in support of the tendered instruction. Plaintiff argued:

> "Your Honor, I would argue that there is sufficient evidence to show that the jury could find that the Defendant had, in fact, violated the statute referred to in this instruction and would deem that it would be appropriate to give the instruction to the jury."

If waiver does not apply, defendant argues plaintiff's theory of recovery did not support providing this instruction to the jury. His basis for this contention is that plaintiff presented no evidence or argument in opening or closing statements that defendant's alleged failure to stop at the "T" intersection was in any way related to the accident let alone that it proximately caused the accident. He directs us to what he characterizes as plaintiff's theory of recovery as represented during the hearing on a motion for summary judgment.

Defendant next directs us to testimony elicited by plaintiff that as Cathy approached the "T" intersection, she would ordinarily ride on the south side of the pavement, dismount her bicycle at the mailbox and then return home. Because plaintiff's theory throughout the proceedings was that the accident occurred near the mailbox, defendant argues, the "T" intersection statute is not relevant. He also contends it was his theory of the case that the accident occurred at the "T" intersection.

Defendant also argues the instruction at issue was properly rejected because the "T" intersection statute was not designed to protect against injury to someone on or next to his or her bicycle. At oral argument defendant was permitted to submit additional authority for his proposition and plaintiff was provided additional time to respond.

Even if error occurred by rejecting the instruction, defendant contends it did not rise to the level of reversible error because the jury was provided the following instructions regarding defendant's duty:

"It is the duty of every operator of a vehicle using a public highway to exercise ordinary care at all times to avoid placing himself or others in danger to exercise ordinary care at all time[s] to avoid a collision."

See IPI Civil 3d No. 70.01 at 70—9 (duty of driver using highway).

"It was the duty of the defendant, before and at the time of the occurrence, to use ordinary care for the safety of the decedent. That means it was the duty of the defendant to be free from negligence."

See IPI Civil 3d No. 10.04, at 10—13 (duty to use ordinary care, adult defendant).

"The plaintiff claims that the decedent was injured and sustained damage, and that the defendant was negligent in one or more of the following respects:

1. In failing to keep a proper lookout.

2. In driving at an excessive rate of speed.

3. In failing to exercise due care to avoid collision with a pedestrian.

4. In failing to exercise due care to avoid collision with a bicycle rider."

See IPI Civil 3d No. 20.01, at 20—7 through 20—8 (negligence issues instruction).

An additional instruction tendered by plaintiff regarding defendant's duty to pedestrians, bicyclists and children, which was given over defendant's objection, stated:

"There were in force in the State of Illinois at the time of the occurrence in question certain statutes which provided that:

Every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian, or any person operating a bicycle or other device propelled by human power and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child.

If you decide that a party violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was negligent before and at the time of the occurrence."

See IPI Civil 3d No. 60.01, at 60—7.

Defendant contends these instructions sufficiently informed the jury of his duties and providing the added instruction would have been repetitious. He finally contends the jury would have been confused if the added instruction was provided because Cathy would then

have been viewed as both a pedestrian or bicyclist and also as being in a vehicle.

■ At the pretrial conference, the trial judge reserved ruling on plaintiff's oral motion to amend his third-amended complaint by adding the right-of-way allegation. Plaintiff never sought or received a ruling on his motion. His failure to obtain the trial judge's ruling constitutes waiver of this issue. *Selby v. Danville Pepsi-Cola Bottling Co.* (1988), 169 Ill. App. 3d 427, 439, 523 N.E.2d 697, 704.

■ We reject defendant's argument section 11—901.01 of the Vehicle Code, which outlines the rights and duties of a vehicle approaching a "T" intersection, does not relate to duties when the accident involves a bicyclist. The case which defendant submitted after oral argument provided no added support for this proposition. In *Bekele v. Ngo* (1992), 236 Ill. App. 3d 330, 330-31, the minor plaintiff's injuries were incurred while he rode a bicycle on a *sidewalk* and defendant was operating a vehicle through an alley. The court concluded the plaintiff could not be considered a pedestrian for purposes of considering defendant's duties pursuant to section 11—1205 of the Vehicle Code. (Ill. Rev. Stat. 1987, ch. 95½, par. 11—1205.) The *Bekele* court did not address the duties of an operator of a vehicle on a public highway to a bicyclist on a highway.

Although section 11—901.01 states a *vehicle* approaching the intersection of a highway from a highway which terminates shall yield to a *vehicle* entering the intersection from the nonterminating highway, an added provision grants a bicyclist all rights and subjects a bicyclist to all duties of the Illinois Vehicle Code. (Ill. Rev. Stat. 1987, ch. 95½, par. 11—1502.) Under different circumstances the instruction tendered by plaintiff may be proper.

■ If plaintiff had properly preserved review of this issue, we would conclude reversible error did not occur. We initially note the instruction did not support his theory of the case which was that the accident occurred near the mailbox and not within the intersection. Moreover, when reviewing an instructions issue, the given instructions should be considered as a whole to evaluate whether they fairly represented the law relevant to the case. (*Nika v. Danz* (1990), 199 Ill. App. 3d 296, 307, 556 N.E.2d 873, 881-82.) Plaintiff's tendered and given instruction which outlined defendant's duty to bicyclists, in conjunction with the additional duty instructions given to the jury, provided proper guidance to the jury in defining defendant's duty to Cathy as a bicyclist.

### B. *Defendant's Instruction*

Over plaintiff's objection, the trial judge admitted the following instruction submitted by defendant:

> "No presumption of negligence arises from the mere happening of an accident. Negligence is not presumed but must be proved as a fact by the party alleging it."

Plaintiff contends providing this nonpattern jury instruction to the jury was improper because the pattern instruction adequately instructed the jury. He further contends considering the additional instructions provided, this instruction was confusing to the jury.

Defendant contends tendering the nonpattern instruction was proper because of the unusual nature of the case where there was no proof when, where, why or how the accident occurred. He also contends it was properly simple, brief, impartial and free from argument. Even if improperly tendered, defendant contends the error was waived because plaintiff only made a general objection stating:

> "[Plaintiff's counsel]: I would object on that. The case cited doesn't specifically state that it should be given as an instruction. It just merely recites this as a point of law, and I think that this would tend to confuse the jury."

Plaintiff provided no explanation about how defendant's instruction would confuse the jury or specifically why the instruction should not be given. Defendant finally argues even if error occurred, plaintiff has not established how he was prejudiced by the instruction. Rather, defendant argues, the instructions as a whole properly advised the jury of the relevant law.

■ Plaintiff's objection did not specifically inform the trial judge the reason he (plaintiff) contended the instruction should be rejected. Supreme Court Rule 239(b) provides that objections to an instruction must be stated with specificity to advise the trial judge of the specific nature of the objection. (134 Ill. 2d R. 239(b).) Plaintiff failed to inform the trial judge how the instruction at issue would confuse the jury.

Defendant directs us to a second district ruling in *Soderquist v. St. Charles Mall Associates, Ltd.* (1988), 177 Ill. App. 3d 207, 223, 532 N.E.2d 903, 912, which concluded defendant's objection to an instruction tendered by plaintiff was not sufficiently specific because the objection was clearly an afterthought. It was not raised until the court had proceeded to additional instructions. Defendant in *Soderquist* also argued against it because it was a non-IPI instruction and it was argumentative. These objections were neither timely nor specific.

(See also *Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 350-51, 415 N.E.2d 337, 339-40.) Although plaintiff's objection in this case was timely made, it failed to include the basis for his objection which he now raises on appeal. He has waived review of defendant's tendered jury instruction.

If plaintiff had preserved this issue for review we would conclude the trial judge did not commit reversible error by tendering the instruction at issue. Contrary to defendant's contention, the instruction could properly be characterized as an "unavoidable accident" instruction, although it was a nonpattern instruction.

Where no IPI instruction accurately states the legal principle at issue, a non-IPI instruction is permissible if it is simple, brief, impartial and nonargumentative. (134 Ill. 2d R. 239(a); *Roberts v. Norfolk & Western Ry. Co.* (1992), 229 Ill. App. 3d 706, 722, 593 N.E.2d 1144, 1155; *Daly v. Carmean* (1991), 210 Ill. App. 3d 19, 31-32, 568 N.E.2d 955, 963; *Fravel v. Morenz* (1986), 151 Ill. App. 3d 42, 46, 502 N.E.2d 480, 482.) Defendant's tendered instruction met these qualifications. Although courts should be cautious before using an unavoidable accident instruction, such an instruction is proper when there is evidence the injured party's injuries did not result from defendant's negligence, but through accident alone. *Crutchfield v. Meyer* (1953), 414 Ill. 210, 213, 111 N.E.2d 142, 143; *Wolpert v. Heidbreder* (1959), 21 Ill. App. 2d 486, 489, 158 N.E.2d 421, 423.

The evidence provided support for an unavoidable accident theory of the cause of Cathy's death. Defendant testified he slowed while making the turn at the "T" intersection and he did not see Cathy until after he completed the turn. The evidence suggested Cathy may have rammed into defendant's water tank while he was making the turn at the intersection. There were no eyewitnesses to the accident and there was limited, if any, evidence which may have suggested defendant's negligence caused Cathy's death. Numerous witnesses testified defendant's view was obstructed in the direction which Cathy would have been travelling. The trial judge did not err by admitting the complained-of instruction which was tendered by defendant.

## C. Defendant's Comments

Plaintiff complains about defendant's reference to his (defendant's) remorse and grief following the accident. Although plaintiff concedes he did not object to these remarks during the trial, he contends the remarks were so inflammatory and prejudicial that waiver should not apply.

Defendant argues the jury could not have been affected by hearing about his grief because of the obvious overwhelming grief and sorrow of Cathy's family. In the alternative, he contends the complained-of evidence was admissible to show defendant's state of mind and mental and emotional condition. Defendant finally argues even if the comments are viewed as error, they do not rise to a plain error level.

We must strictly apply the waiver rule unless the evidence shows defense counsel's comments involved flagrant misconduct such that the judicial process was substantially impaired and the jury verdict was brought about by biased passion rather than an impartial consideration of the evidence. *Gillespie v. Chrysler Motors Corp.* (1990), 135 Ill. 2d 363, 375-76, 553 N.E.2d 291, 297; *Cunningham v. Millers General Insurance Co.* (1992), 227 Ill. App. 3d 201, 207, 591 N.E.2d 80, 84.

Before the trial began, defense counsel filed a motion *in limine* arguing the grief, sorrow, or mental anguish of Cathy's parents was irrelevant to any issue in the case. The trial judge excluded this type of evidence. Plaintiff argues defendant's presentation of such evidence related to himself (defendant) was prejudicial and requires reversal of the jury verdict.

In opening remarks, defense counsel stated there was no dispute about the grief and sorrow the Syrcles had experienced since April 1987. Defense counsel again indicated the Syrcles' grief while questioning plaintiff. Counsel stated "there's no question about the effect on you and your wife." In his closing argument, defense counsel again noted plaintiff's grief when he stated, "everybody in this courtroom sympathizes with Scott and Cheryl. In your sympathy for the Syrcle family and in your compassion for the Syrcle family don't place blame where it doesn't belong."

Plaintiff directs us to defense counsel's comment in his opening remarks alluding to a call defendant received from the Syrcles a year after the accident in which they told defendant Cheryl was pregnant again. Defense counsel stated this was their effort to alleviate some of defendant's grief over the accident.

While cross-examining Hoover, defense counsel elicited her view the Syrcles had not blamed defendant for the death of their daughter. Hoover also opined the accident significantly affected defendant. Plaintiff also complains about responses defense counsel elicited while cross-examining plaintiff. Plaintiff stated that when defendant came to the hospital the night of the incident he (defendant) was upset as was everyone. Plaintiff also reported defendant attended Cathy's fu-

neral and was upset as was everyone else. When asked whether the incident had an effect on defendant, plaintiff responded, "I imagine."

Plaintiff also directs us to defense counsel's direct examination of defendant during which defendant reported that after the incident, his physician placed him on medication and that he was unable to sleep or eat for two or three weeks. Plaintiff also outlines the following testimony by defendant:

"Q. What happened when you got to the hospital?

A. Well, we met them on the parking lot, and we was too late. Cathy was already gone when we got there.

Q. Did you see Scott's mom or dad?

A. Yes. She throws her arms around me and told me that they didn't blame me in any way.

\* \* \*

Q. And then did you see the Syrcles again at the funeral home when Cathy had her funeral?

A. Yes.

Q. And \*\*\* since then have you seen them periodically like at things like the Corn Carnival?

A. Yes.

Q. Have you guys basically, you know, said hi and talked when you come into contact with each other?

A. Yes.

Q. Am I right that you even got a phone call at your house on Christmas that let you know for whatever reason that Cheryl was expecting another child.

A. Yes, we did.

Q. And, in fact, when that child was born did you send them a baby gift?

A. My wife took one over, yes."

Plaintiff contends defense counsel referred to defendant's grief and sorrow again in closing argument when he urged the jury that its conclusion negligence occurred in this case would be a "dirty word."

Plaintiff argues these references to defendant's grief were an effort to appeal to the jurors' sympathy and to overcome the sympathy the jurors may have felt for the Syrcles. Defendant contends the jury was not swayed by this line of questioning. In the alternative, he argues evidence of defendant's state of mind and mental and emotional condition was relevant. Defendant's general reliance on *Hackett v. Ashley* (1979), 71 Ill. App. 3d 179, 186-87, 389 N.E.2d 246, 251, is misplaced. *Hackett* addressed the relevance of the state of mind of parties who allegedly entered a contractual agreement. Testimony

about defendant's emotional state *after* the incident was not relevant to whether he was negligent when the incident occurred.

Defendant also contends the questions were relevant as an admission of prior inconsistent conduct by plaintiff. These questions simply were not relevant or material to whether defendant was negligent the day the incident occurred. As evidence of Cathy's family's grief would have been inappropriate, testimony presented by defendant related to his grief over the accident should not have been permitted.

■ Although the testimony elicited by defendant was improper, plaintiff waived review of the issue by not objecting at trial. Moreover, plaintiff has not shown how he was prejudiced by this testimony. The trial judge admonished the jurors before trial and before deliberation that they should not allow sympathy, passion or prejudice to influence their decision. We find no reversible error in the trial judge's rejection of plaintiff's instruction, admission of defendant's instruction, or defense counsel's inappropriate references to defendant's grief.

Affirmed.

McCULLOUGH and LUND, JJ., concur.